(No. 47262.- )

DIANE M. SEIFERT, Appellee, v. STANDARD PAVING CO. *et al.*—(The State of Illinois, Appellant.)

*Opinion filed September 20, 1976.*

112

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and Patricia Rosen, Assistant Attorneys General, of counsel), for appellant.

John D. Hayes & Associates; Pochis & Berns; Horwitz, Anesi, Ozmon & Associates; and Sandman, Levy & Moltz, all of Chicago (Alan L. Unikel and Joseph P. Della Maria, Jr., of Rothschild, Barry & Myers, and Philip B. Kurland, all of Chicago, of counsel), for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

This appeal concerns six separate negligence actions brought in the circuit court of Cook County in which the State of Illinois was named as a defendant. The State filed a motion in each case to dismiss the complaint on the ground that persons injured through the negligence of agents or employees of the State can seek relief only in the Court of Claims. The trial court denied the motions and held that the Court of Claims Act (Ill. Rev. Stat. 1973, ch. 37, par. 439.1 through 439.24–9; Ill.Rev. Stat. 1973, ch. 127, par. 801) violated the equal protection and due process clauses of both the United States (U.S. Const., amend. XIV) and the Illinois (Ill. Const. 1970, art. I, sec. 2) constitutions. The court, under Rule 308(a) (58 Ill. 2d R. 308(a)), found that its orders involved "questions of law as to which there is substantial ground for difference of opinion," and that an immediate appeal might "advance the ultimate termination of the litigation." The appellate court granted the State's petition for leave to appeal, and the six cases were consolidated for argument and decision. The appeal was later transferred to this court under our Rule 302(b) (58 Ill. 2d R. 302(b)).

The plaintiffs contend that persons injured by negligence of employees or agents of the State are denied equal protection of the laws in that they are confined for redress to the Court of Claims, while persons injured by the negligence of persons other than the State are allowed to bring suit in a circuit court. They urge here that there is no rational basis for distinguishing between these two classes of injured people and point out that under the Court of Claims Act an injured party does not have a right to a jury trial, or a right to appeal from a decision of the Court of Claims and any recovery is limited to $100,000.

It was after the trial court here had concluded that the Court of Claims Act violated the equal protection and due process clauses of the constitutions that this court in *Williams v. Medical Center Com.*, 60 Ill. 2d 389, rejected contentions similar to those the plaintiffs make. The plaintiffs, however, claim that *Williams* does not have a foreclosing effect on their position and contend that in *Williams* this court decided only that section 4 of article XIII of the Constitution of 1970 ("Except as the General Assembly may provide by law, sovereign immunity in this State is abolished") did not deny equal protection of the laws to persons injured by negligence attributable to the State. They say their position is that the procedure adopted by the State under the Court of Claims Act for the consideration and allowance of claims of injured persons violates the equal protection clauses of both the Illinois and United States constitutions.

What this court did hold in *Williams* was that a State medical commission was an arm of the State and that an action in tort against it was precluded by the statute providing (as the Constitution of 1970 authorizes) that the State shall never be made a defendant or a party in any court except as is provided for in the Court of Claims Act. (Ill. Rev. Stat. 1973, ch. 127, par. 801.) The court there rejected the contention that this immunity was invalid

under the equal protection clauses of the constitutions of the United States and of Illinois. The court said in part:

"The plaintiff also contends, however, that even though the immunity of the Commission from an action of this kind is thus authorized, that immunity is invalid under the equal protection clauses of the constitutions of Illinois and of the United States. At the outset of our discussion of this contention, we wish to emphasize that we are not concerned with the wisdom of section 4 of article XIII of the Constitution of 1970 or of the statutes here involved. Our views with respect to the immunity of local governmental units were stated in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60, and many other opinions. See *Sweney Gasoline & Oil Co. v. Toledo Peoria & Western R.R. Co.* (1969), 42 Ill. 2d 265; *Hutchings v. Kraject* (1966), 34 Ill. 2d 379; *Lorton v. Brown County Community Unit School District No. 1* (1966), 35 Ill. 2d 362.

Those decisions, however, did not involve the sovereign immunity of the State or the validity of the Court of Claims Act, questions which were thoroughly threshed out in the recent constitutional convention. The present language of section 4 of article XIII—'Except as the General Assembly may provide by law, sovereign immunity in this State is abolished'—was adopted only after the defeat of an amendment which would have limited the power of the General Assembly to the provision of a special forum, and would have eliminated its authority to restrict the right of trial by jury and to impose time limitations and limitations upon the amount of recovery. (5 Record of Proceedings, Sixth Illinois

Constitutional Convention 3948-3952.) In our opinion the contention of the plaintiff is without merit. A constitutional grant of immunity to a sovereign government has never, so far as we are aware, been held to be an arbitrary classification which violates equal protection." 60 Ill. 2d 389, 394-95.

There is no doubt the law need not treat all persons alike for all purposes. Illustrating this and also the requirement for a proper classification we said in *Davis v. Commonwealth Edison Co.,* 61 Ill. 2d 494, 497:

"There is no question that the legislature may establish classifications, for 'perfect uniformity of treatment of all persons is neither practical nor desirable.' [Citation.] A classification, however, cannot be arbitrary or unreasonable. It must be based on a rational difference of condition or situation existing in the persons or the objects upon which the classification rests. [Citations.]"

It is clear in *Williams* that a "constitutional grant of immunity to a sovereign government" does not create an arbitrary classification for purposes of the equal protection clause. (60 Ill. 2d 389, 394-95.) Thus, the General Assembly may classify or distinguish between persons injured by agents and employees of the State and persons injured by others. We think it obvious, therefore, that the State may establish a body and procedure to consider claims which may be submitted by injured persons without any violation of the equal protection clauses of the Constitution of the United States or the Constitution of Illinois. Further, as will be shown, we consider the procedures the legislature did provide do not offend constitutional guaranties.

Before turning to these complaints of the plaintiffs as to certain procedures of the Court of Claims Act, we will consider an equal protection question which, though not formally an issue or point in their brief, is raised in several

places. In Illinois, units of local government may be held liable in most instances (see, *e.g., Arnolt v. City of Highland Park,* 52 Ill. 2d 27) for tortious acts of their agents. An injured party may proceed against the local governmental body in the circuit court with the right to jury trial, the right to appeal and the right to full compensation for his damages. (Ill. Rev. Stat. 1975, ch. 85, pars. 1—101 through 9—107.) The plaintiffs say that there is no basis for distinguishing between persons injured by the State and persons injured by units of local government, citing *Harvey v. Clyde Park District,* 32 Ill. 2d 60, in support of their position. They say: "All of these rights [*e.g.,* right to a jury trial] are denied plaintiffs, not because tortious acts of the governmental functions are different, but solely because the governmental agent is denominated a State agent rather than that of a municipality or a park district or a county, or what have you." We consider, however, that there is a rational basis for separately classifying those injured by agents or employees of the State and the classification does not deny the plaintiffs equal protection of the law.

Contentions similar to those made by the plaintiffs have recently been rejected in three other jurisdictions. (*Brown v. Wichita State University* (1976), 219 Kan. 2, 547 P.2d 1015; *Sousa v. State* (1975), 115 N.H. 340, 341 A.2d 282; *Krause v. State* (1972), 31 Ohio St. 2d 132, 285 N.E.2d 736, 60 Ohio Op. 2d 100.) The Supreme Court of Kansas in *Carroll v. Kittle* (1969), 203 Kan. 841, 457 P.2d 21, abolished its judicially created doctrine of governmental immunity for negligence. Subsequently, the Kansas legislature enacted statutes which prohibited suits against the State but which left units of local government open to be sued and held liable for negligence. (Kan. Stat. Ann. sec. 46—901 *et seq.*) The court in *Brown* was called upon to determine whether these statutes denied equal protection of the laws by "discriminating between the various levels of governmental tort-feasors by imposing liability

based on the *unit* of government involved." (219 Kan. 2, ——, 547 P.2d 1015, 1025.) The court in upholding the legislation said:

> "But withholding a legal remedy for persons injured by the state, while allowing remedy for a non-governmental tortious activity, or a municipal government's tortious activity, is not discriminatory governmental action. (*Krause v. State,* 31 Ohio St. 2d 132, 145, 285 N.E.2d 736 [1972], appeal dismissed for want of a substantial federal question, 409 U.S. 1052, 93 S. Ct. 557, 34 L. Ed. 2d 506, reh. denied, 410 U.S. 918, 93 S. Ct. 969, 35 L. Ed. 2d 280; *Hutchinson v. Board of Trustees of Univ. of Ala.,* 288 Ala. 20, 25, 256 So. 2d 281 [1971]; and *O'Dell v. School District of Independence,* 521 So. 2d 403, 409 [Mo. 1975].) The constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. (*Tigner v. Texas,* 310 U.S. 141, 147, 60 S. Ct. 879, 84 L. Ed. 1124, reh. denied, 310 U.S. 659, 60 S. Ct. 1092, 84 L. Ed. 1422.) The Fourteenth Amendment does not deny to states the power to treat different classes of persons in different ways. (*Reed v. Reed,* 404 U.S. 71, 75, 92 S. Ct. 251, 30 L. Ed. 2d 225.)" 219 Kan. 2, ——, 547 P.2d 1015, 1025-26.

The *Brown* court considered that three interests of the State were protected by the legislation and that these interests justified the classifications: "First, is the necessity to protect the state treasury. \*\*\* Second, governmental immunity enables government to function unhampered by the threat of time and energy consuming legal actions, which would inhibit the administration of traditional state activities. \*\*\* Third, governmental immunity affords that degree of protection demanded by the numerous administrative and high-risk activities undertaken by the various

governments." (219 Kan. 2, ——, 547 P.2d 1015, 1027-28.) The argument can be made, of course, and it has been made, that the justifications for classifying separately those injured by the State are equally applicable in cases involving units of local government. In *Sousa v. State* (1975), 115 N.H. 340, ———, 341 A.2d 282, 285-86, the Supreme Court of New Hampshire rejected that contention, stating:

"[S]tate immunity for torts involves certain factors not present in the immunity of cities and towns. By its magnitude the striking of a balance between granting relief to injured claimants and protecting the solvency of the State is a more complex problem at that level than it is for most cities and towns. Extremely broad considerations of public policy and government administration are involved."

The first complaint of the plaintiffs as to procedure under the Court of Claims Act is that the $100,000 limit on what may be allowed on a personal injury claim discriminates against persons injured by negligent agents or employees of the State whose damages are in excess of $100,000. We consider that this court's decision in *Hall v. Gillins,* 13 Ill. 2d 26, meets this objection. In *Hall,* the plaintiffs challenged the validity of the provision of the Wrongful Death Act which limited recovery to $25,000. (Ill. Rev. Stat. 1957, ch. 70, par. 2.) They contended that it violated section 19 of article II of the Constitution of 1870 [now section 12 of article I of the Constitution of 1970], which provided that "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; ***." This court, after observing that at the common law there was no cause of action for wrongful death, said:

"In our opinion the constitutional question is not formidable when it is considered in the context of the situation that existed when the

statute was originally enacted. At that time no action whatsoever was permitted for a wrongful death. The legislature took away no right when it enacted the statute. It created both the right and the remedy, and we think that its power to limit the maximum recovery in the action that it created can not be questioned." (13 Ill. 2d 26, 29; see also *Cunningham v. Brown,* 22 Ill. 2d 23.) The situation here is comparable. There had not been in Illinois a right to sue the State for the negligent acts of its agents. Claims against the State have been allowed only when the General Assembly has provided for it. (6 Record of Proceedings, Sixth Illinois Constitutional Convention 645–54.) Since the General Assembly provided for both the right and the remedy when it enacted the Court of Claims Act, it was within its judgment to limit the maximum which might be allowable. See also *Wright v. Central Du Page Hospital Association,* 63 Ill. 2d 313, 325-30.

We are not convinced by the plaintiffs' argument that they have a right to trial by jury, for which the Court of Claims Act does not provide. Section 13 of article I of the Constitution of 1970 provides that: "The right of trial by jury as heretofore enjoyed shall remain inviolate." In *City of Monmouth v. Pollution Control Board,* 57 Ill. 2d 482, the city had argued that it had a right to a trial by jury in proceedings before the Pollution Control Board. This court rejected the contention, stating: "The constitutional guarantee that 'the right to trial by jury as heretofore enjoyed shall remain inviolate' (Ill. Const. (1970), art. I, sec. 13) has been consistently interpreted by this court as inapplicable to special or statutory proceedings unknown to the common law. See *People ex rel. Keith v. Keith,* 38 Ill. 2d 405." (57 Ill. 2d 482, 485.) The Court of Claims Act is a statutory proceeding unknown to the common law. Persons presenting claims to the Court of Claims, therefore, have no right to trial by jury.

There are other equal protection complaints by the plaintiffs and a series of contentions that the Court of Claims Act denies due process. They say they are denied equal protection because they do not have a right to cross-examine or subpoena witnesses, and because they are required by section 25 of the Court of Claims Act (Ill. Rev. Stat. 1975, ch. 37, par. 439.24—5) to pursue all "other remedies and sources of recovery" before seeking a final determination of their claims. The Court of Claims Act denies them due process of law because they do not have a right to a jury trial, a right to appeal or a right to subpoena or cross-examine witnesses. Due process is also denied, they argue, because they must pursue all other remedies before their claims are finally determined and because their recovery is limited to $100,000. We do not find these contentions convincing. The fault with the plaintiffs' argument is that it is bottomed on the assumption that proceedings in the Court of Claims must be conducted as proceedings in a court of law. Manifestly this is not true; proceedings before the Court of Claims are not adversary in nature, and they are not designed to provide a trial. The General Assembly in providing for the Court of Claims and in establishing procedures for it intended to provide an orderly process for the presentation and deciding of claims against the State. (*Edelen v. Hogsett,* 44 Ill. 2d 215.) There was no intention or necessity that there would be a trial at law to determine whether a claim would be allowed. The procedures in the Court of Claims are inherently different from those in the circuit court because the Court of Claims serves an entirely different function. The plaintiffs have not established grounds for holding that the Court of Claims denies them equal protection or due process.

Another argument of the plaintiffs is that the Court of Claims Act violates the judicial article (Ill. Const. 1970, art. VI) and the separation of powers provision (Ill. Const. 1970, art. II, sec. 1) of the Constitution of Illinois. They

contend that the Court of Claims is not a court within the meaning of the judicial article. However, they say it is performing a judicial function when it considers and resolves claims brought against the State, and is thus acting in violation of article II, section 1, which provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."

There is no doubt that the Court of Claims is not a court within the meaning of the judicial article. Section 26 of article IV of the Constitution of 1870 provided that the State could not be made a defendant in a court of law or equity. Consequently, under the Constitution of 1870 the General Assembly could not allow claims against the State to be heard in the courts. (See 6 Record of Proceedings, Sixth Illinois Constitutional Convention 654-55.) It was for this reason that the General Assembly established the body called the Court of Claims in 1903. It was obviously not to be a court of law, but rather a body to receive and process in an orderly manner claims which might be made against the State.

We have no doubt that the Court of Claims Act does not violate the separation of powers provision of the Constitution of Illinois. On that provision, we recently stated:

"The separation of powers doctrine does not contemplate the division of powers of government into rigidly separated compartments. This court has held that the doctrine was not designed to achieve a complete divorce among the three branches of government. (*People v. Reiner,* 6 Ill. 2d 337, 342.) The true meaning, in theory and in practice, of the doctrine is that the whole power of two or more of the branches of government shall not be lodged in the same hands. *City of Waukegan v. Pollution Control Board,* 57 Ill. 2d 170, 174; *Hill v. Relyea,* 34 Ill. 2d 552, 557;

*Field v. People ex rel. McClernand,* 3 Ill. (2 Scam.) 79, 83." *In re Estate of Barker,* 63 Ill. 2d 113, 119; see also *People v. Farr,* 63 Ill. 2d 209. We cannot see how the Court of Claims Act is in conflict with section 1 of article II of the present constitution. Under the Constitution of 1870 no court could entertain claims brought against the State. The Court of Claims was established by the legislature, as we have said, simply to receive and process in an orderly manner claims which might be addressed to the State. It was not to function as a court and adjudicate cases. There was no encroachment upon courts of law by its establishment. Under the Constitution of 1970 the General Assembly has authority, we consider, to provide for the filing and resolving of claims against the State. Section 4 of article XIII does not require that the legislature must provide that any claims against the State be prosecuted in the circuit court or other court of law.

For the reasons given, the judgments of the circuit court of Cook County are reversed.

*Judgments reversed.*