Herbert **DELLENBACH**,
Plaintiff–Appellant,

v.

James **LETSINGER, Paul Buchanan, Janet Roberts Blue, Marianna Novak and Debra Banach, Defendants–Appellees.**

No. 87–2972.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1989.
Decided Nov. 14, 1989.

Jerold Solovy, Sidney I. Schenkier, Stevem N. Berk, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Herbert Dellenbach, Westville Correctional Center, Westville, Ind., pro se.

Michael A. Schoening, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This case is before us on appeal from the district court's judgment dismissing the complaint. The plaintiff-appellant, Herbert Dellenbach, brought suit for damages under 42 U.S.C. § 1983. He alleged that the five defendants—two state judges, a court commissioner, and two court reporters—had violated his right to due process by interfering with the appeal of his criminal conviction. The district court granted the defendants' motion to dismiss on the ground that Mr. Dellenbach's claims were barred by the doctrine of judicial immunity. For the following reasons, we affirm.

## I.
### Background

On June 2, 1987, Mr. Dellenbach filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants had violated his constitutionally protected due process rights by interfering with his right to appeal his criminal state-court conviction. The defendants named in this suit were Judge James Letsinger of the Superior Court of Lake County, Indiana; Judge Paul Buchanan, Chief Judge of the Indiana Court of Appeals; Ms. Janet Roberts Blue, a Commissioner on the Indiana Court of Appeals; and Ms. Marianna Novak and Ms. Debra Banach, both of whom are court reporters for the Superior Court of Lake County.

### A. *Facts*

Mr. Dellenbach was charged in an Indiana state court with various offenses relating to an alleged scheme to defraud consumers in the purchase of heating systems. Mr. Dellenbach's trial was consolidated with the trial of his son, Randall Dellenbach (Randall), who was represented by separate counsel. Judge Letsinger of the Superior Court of Lake County presided over the trial. A jury found Mr. Dellenbach guilty of one count of conspiracy to commit theft, four counts of attempted theft, two counts of theft, and one count of corrupt business influence.[1] The Dellenbachs took separate appeals.

Before Mr. Dellenbach filed his appeal, Randall's attorney had purchased a copy of the consolidated trial transcript for the purpose of preparing Randall's case. Mr. Dellenbach then filed his appeal and moved to consolidate Randall's case with his own pursuant to Rule 5(B) of the Indiana Rules of Appellate Procedure.[2] This motion was granted by Chief Judge Buchanan.

---

1. After being convicted of these crimes, Mr. Dellenbach failed to appear for sentencing. A bench warrant was issued and, when Mr. Dellenbach was returned to Indiana, Judge Letsinger sentenced him to a term of imprisonment totaling 29 years. *See Dellenbach v. State,* 508 N.E.2d 1309, 1312, 1318 (Ind.Ct.App.1987).

2. Rule 5(B) of the Indiana Rules of Appellate Procedure provides:

Mr. Dellenbach alleges that the defendants "conspired together with each other to compel the Plaintiff to obtain and pay for unneeded and unnecessary 'transcripts' as a pre-condition for the consolidated appeal of Herbert Dellenbach and Randall Dellenbach to be heard by the Indiana Court of Appeals in Indianapolis[,] Indiana." R. 2 (Allegation 1) (emphasis removed). Mr. Dellenbach alleges that, while the consolidated appeal was pending, Judge Letsinger telephoned Judge Buchanan, Chief Judge of the Indiana Court of Appeals, and "ordered [him] to refuse to hear Herbert Dellenbach[']s appeal until Herbert Dellenbach paid $1200.00 for 'transcripts' of the [consolidated] trial." *Id.* (emphasis removed). In response to this call, Chief Judge Buchanan allegedly instructed Ms. Blue, a Court Commissioner, to contact Mr. Dellenbach's counsel and inform him that "his client's appeal could not proceed until a consolidated transcript was purchased." Appellant's Br. at 5. On Chief Judge Buchanan's instructions, Ms. Blue relayed the message to Mr. Dellenbach's counsel. The required $1200 subsequently was paid to the Lake County court reporters, Ms. Novak and Ms. Banach. Ms. Novak, in turn, informed Judge Letsinger of the payment. Judge Letsinger then allegedly informed Chief Judge Buchanan that the transcript fee had been paid and that Mr. Dellenbach's appeal could proceed.[3] Mr. Dellenbach contends that this transcript was unnecessary because Randall already had obtained a transcript

and only one such record was necessary for their consolidated appeal.

### B. District Court Opinion

In his complaint, Mr. Dellenbach alleged that the defendants had deprived him of his constitutional rights under the fifth, sixth, eighth, and fourteenth amendments by conspiring to delay his criminal appeal in the state court. He further alleged that Judge Letsinger had refused to hear testimony at trial regarding "threats to the lives of Herbert Dellenbach and his son, Randall Dellenbach."[4] R. 2 (Allegation 1). Because of these actions, Mr. Dellenbach submitted that he and his son were unable to get a full and fair hearing.

The district court granted the defendants' motion to dismiss on the ground that Mr. Dellenbach's claims were barred by the doctrine of judicial immunity. In analyzing the claims against Judge Letsinger and Chief Judge Buchanan, the court relied upon our decision in *Eades v. Sterlinske*, 810 F.2d 723, 725–26 (7th Cir.), *cert. denied*, 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987), and invoked the "well-established doctrine of immunity" that recognizes that "judges are not subject to personal liability for judicial acts performed within their jurisdiction." *Dellenbach v. Letsinger*, No. H 87–339, order at 2 (N.D. Ind. Nov. 2, 1987) [hereinafter Order] (citing *Wilkes v. Dinsman*, 48 U.S. (7 How.) 89, 12 L.Ed. 618 (1849)). "Immunity totally insulates judges from liability for actions taken within their judicial capacity, even if

---

**Consolidation on Appeal.** When two (2) or more actions have been consolidated for the purpose of trial in the court below or where on appeal two (2) or more actions involve a common question of law or fact, the court on appeal may, on its own motion or on petition, order a consolidation of any part or all the records or proceedings on appeal, in the furtherance of convenience and avoidance of unnecessary cost and delay.

Without being limited thereto, such court may specifically provide for the omission of any exhibits or pleadings which are duplicitous in nature, as well as transcripts of orders and original or copies of bills of exceptions and exhibits to the extent that they are duplicated in any one or more of the actions consolidated therewith.

3. The Indiana Court of Appeals vacated Mr. Dellenbach's conviction for attempted theft, but otherwise affirmed the judgment and sentence of the trial court. *Dellenbach v. State*, 508 N.E.2d at 1319.

4. On appeal, Mr. Dellenbach does not raise the issue of Judge Letsinger's refusal at trial to hear evidence regarding the death threats. Mr. Dellenbach admits that, "[w]hile erroneous, this refusal was a judicial act committed within Judge Letsinger's jurisdiction and thus protected by the doctrine of judicial immunity." Appellant's Br. at 11 n. 5. Mr. Dellenbach further admits that "[t]he act of determining what evidence should be heard at trial is a quintessential judicial act, and is entitled to the protections of immunity regardless of the magnitude of the error." *Id.* at 14.

the judge acts maliciously or corruptly." Order at 2–3 (citing *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). The district court noted that, "[i]n adjudicating controversies between parties, judges must be free to render decisions without fear of personal liability for those decisions." *Id.* at 3 (citing *Stump,* 435 U.S. at 364, 98 S.Ct. at 1108). In its discussion of the commissioner and the two court reporters' entitlement to immunity, the district court emphasized that "the decision of whether and when to hear an appeal is a discretionary and judicial act for purposes of immunity; in addition, the defendant clerks were acting, according to plaintiff's complaint, at the direction of the two judges." Order at 4 (citation omitted). The district court concluded that the duties of these court personnel " 'had an integral relationship with the judicial process and are cloaked by the traditional doctrine of judicial immunity.' " *Id.* (quoting *Eades,* 810 F.2d at 726).[5]

## II.

### Analysis

#### A. *The Basic Principles*

Mr. Dellenbach alleges that the state trial court violated his civil rights when it burdened his access to the courts and intentionally delayed his appeal by conspiring to make him pay for an unnecessary transcript. Although Mr. Dellenbach has a right to sue under section 1983 for damages that arise from violations of his civil rights, these defendants have an equal right to be free from suit for civil damages if their actions qualify for absolute judicial or quasi-judicial immunity. Absolute immunity, like qualified immunity, has the important attribute of "its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985). This "entitlement is an *immunity from suit* rather than a mere defense to liability." *Id.* at 526, 105 S.Ct. at 2815 (emphasis in

original); *see also Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967) (Judicial immunity is applicable in suits under section 1983 because the "legislative record [gave] no clear indication that Congress meant to abolish wholesale all common-law immunities."); *Lowe v. Letsinger,* 772 F.2d 308, 311 (7th Cir.1985).

▪ As Chief Judge Bauer noted in *Eades,* 810 F.2d at 725, the Supreme Court's recognition of the judicial immunity doctrine dates back to its decision in *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). In *Bradley,* the Court held that judges are not liable in civil actions for their judicial acts unless they have acted in the "clear absence of all jurisdiction." 80 U.S. (13 Wall.) at 351; *see also Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978) ("[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' "); *Pierson,* 386 U.S. at 553–54, 87 S.Ct. at 1217 ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction...."). In *Eades,* our circuit also reiterated five considerations the Supreme Court previously had identified in support of judicial immunity:

First, a judge must be free to make decisions without fear of personal consequences. Second, because litigation necessarily involves controversy and competing interests, losing parties may be quick to ascribe malevolent motives to a judge. Third, a qualified "good faith" immunity would be virtually worthless because of the ease of alleging bad faith. Fourth, the prospect of defending civil damage actions would force judges to

---

**5.** The district court concluded its discussion with an analysis of whether sanctions under Rule 11 of the Federal Rules of Civil Procedure

should be imposed against Mr. Dellenbach for filing a frivolous action. *See* Order at 5–6. This claim is not before us.

employ otherwise unnecessary meticulous recordkeeping and would render judges less inclined to rule forthrightly. Finally, other safeguards, such as appeal and impeachment reduce the need for private rights of action for damages against judges.

810 F.2d at 725 (citing *Bradley*, 80 U.S. (13 Wall.) at 347–54). Because the underlying purpose of immunity is to preserve judicial independence in the decision-making process, these defendants will be entitled to absolute immunity if their actions meet a two-part test: first, the acts must be *within the judge's jurisdiction;* second, these acts must be performed in the judge's *judicial capacity. See Stump*, 435 U.S. at 356, 360, 98 S.Ct. at 1104, 1106; *Bradley*, 80 U.S. (13 Wall.) at 351–52.

 We note that, since November 2, 1987, when the district court filed its decision, the Supreme Court has added to the jurisprudence in this area by its decision in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). In *Forrester*, a probation officer filed a section 1983 action against a state judge who had discharged her. The district court granted summary judgment on the basis of absolute judicial immunity. The court of appeals affirmed, concluding that the probation officer "performed functions that were 'inextricably tied to discretionary decisions that have consistently been considered judicial acts.'" *Id.* at 222, 108 S.Ct. at 541 (quoting the court below, *Forrester v. White*, 792 F.2d 647, 657 (7th Cir.1986)). The Supreme Court reversed the lower courts and denied absolute immunity because the judge was acting in an *administrative* and not a *judicial* capacity when he demoted and discharged Ms. Forrester. *Id.* 484 U.S. at 229–30, 108 S.Ct. at 545–46. *Forrester* emphasizes that every inquiry in the common law immunity context must be a *functional* one—an inquiry that considers the nature of the governmental function performed and the effect "that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* at 224, 108 S.Ct. at 542. In the context of judicial immunity, that functional inquiry is informed by numerous Su-

preme Court decisions, left undisturbed by *Forrester*, that have concluded that truly judicial functions are worthy of absolute immunity. *See id.* at 225–28, 108 S.Ct. at 543–45 (citing with approval *Bradley, Pierson*, and *Stump* ). Indeed, *Forrester* reaffirmed the conclusion of these cases that "truly judicial acts" are deserving of absolute judicial immunity. *Id.* at 227, 108 S.Ct. at 544 ("Difficulties have arisen primarily in attempting to draw the line between *truly judicial acts, for which immunity is appropriate,* and acts that simply happen to have been done by judges.") (emphasis supplied). Thus, our present task is to undertake a functional inquiry to determine whether the acts in question are truly a judicial function, as opposed to an act that "simply happen[s] to have been done by [a] judge[ ]." *Id.*

### B. *Application of the Principles to this Case*

As we already have noted, our evaluation of the case before us must be guided by the analysis set forth by the Supreme Court in *Stump.* First, we must inquire whether the judge "had jurisdiction over the subject matter." *Stump*, 435 U.S. at 356, 98 S.Ct. at 1105. In considering this question, we must remember that "'some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction....'" *Id.* (quoting *Bradley*, 80 U.S. (13 Wall.) at 352). Therefore, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* 435 U.S. at 356–57, 98 S.Ct. at 1104–05 (quoting *Bradley*, 80 U.S. (13 Wall.) at 351). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* 435 U.S. at 359, 98 S.Ct. at 1106. Second, we must determine whether the alleged acts were performed in the judge's "judicial capacity." "It is only for acts performed in his

'judicial' capacity that a judge is absolutely immune...." *Id.* at 360, 98 S.Ct. at 1106; *see also Rolleston v. Eldridge,* 848 F.2d 163, 164 (11th Cir.1988); *Reed v. Village of Shorewood,* 704 F.2d 943, 951 (7th Cir. 1983).

### 1. The Judges

#### a. Jurisdiction over the subject matter

■ Mr. Dellenbach argues that Judge Letsinger is not entitled to absolute judicial immunity because he acted in the absence of jurisdiction. Appellant's Br. at 11. In conclusory fashion, Mr. Dellenbach appears to argue that Judge Letsinger telephoned Chief Judge Buchanan *after* the case was pending before the Indiana Court of Appeals and asked him not to consider Mr. Dellenbach's appeal until $1200 had been paid for a transcript of the consolidated trial. *Id.* at 4–5. He submits that "[a]s the presiding trial judge, Judge Letsinger's jurisdiction did not encompass matters involving Mr. Dellenbach's *pending appeal.*" *Id.* at 11 (emphasis supplied).

Rule 3(A) of the Indiana Rules of Appellate Procedure states the general rule concerning the acquisition of appellate jurisdiction and the concurrent loss of jurisdiction in the trial court: "Every appeal shall be deemed submitted and the appellate tribunal deemed to have acquired jurisdiction thereof on the date the record of proceedings is filed with the clerk of the Supreme Court and Court of Appeals." Ind.R. App.P. 3(A). Indiana courts consistently have interpreted this rule to mean that, "when appellate jurisdiction is acquired, the trial court is deprived of any further jurisdiction in the action." *Donahue v. Watson,* 413 N.E.2d 974, 975–76 (Ind.Ct. App.1980); *see also Bright v. State,* 259

Ind. 495, 289 N.E.2d 128, 129 (1972); *Nehring v. Raikos,* 181 Ind.App. 125, 390 N.E.2d 1092, 1096 (1979); *Beard v. State,* 176 Ind.App. 348, 375 N.E.2d 270, 271 (1978). Since Mr. Dellenbach apparently had not filed his transcript, it is not at all clear, even accepting Mr. Dellenbach's factual allegations, that the appellate court had jurisdiction to the exclusion of the trial court at the time the telephone call allegedly was made. In any event, Judge Letsinger did not act "in the clear absence of jurisdiction." He was acting with respect to a criminal matter tried in his court. If he erred in his belief that he had authority to deal with matters relating to the transcript, his error was, at most, a "grave procedural error"—not an act in the "clear absence of all jurisdiction." As the Supreme Court stated in *Bradley:*

> A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter[,] any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

80 U.S. (13 Wall.) at 351–52.[6]

Mr. Dellenbach next asserts that Chief Judge Buchanan was acting in the absence

---

**6.** *See Rolleston v. Eldridge,* 848 F.2d 163, 164–65 (11th Cir.1988) (rejecting argument that a state trial judge's failure to follow procedural rules and his issuance of an order after plaintiff already had filed notice of interlocutory appeal constituted acts in the clear absence of all jurisdiction); *Schucker v. Rockwood,* 846 F.2d 1202, 1204 (9th Cir.) (holding that judge who issued a civil contempt order after a notice of appeal had been filed acted, at most, in excess of his jurisdiction, but not in clear absence of all jurisdiction), *cert. denied,* — U.S. —, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988); *Mullis v. United States*

*Bankruptcy Court, Dist. of Nevada,* 828 F.2d 1385, 1389 (9th Cir.1987) (rejecting argument that filing of a notice of appeal meant that bankruptcy judge's later acts were performed in clear absence of jurisdiction), *cert. denied,* — U.S. —, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988); *Green v. Maraio,* 722 F.2d 1013, 1017 (2nd Cir.1983) (holding judge who allegedly altered defendant's trial transcript did not act in clear absence of subject matter jurisdiction even though the defendant, having been sentenced, was no longer before the court at the time of the

of jurisdiction because he was not assigned to the panel considering Mr. Dellenbach's appeal. Certainly it cannot be argued that Chief Judge Buchanan's decision to reschedule or even delay an appeal is outside of his jurisdiction. The control of a docket is a key function to the proper workings of a court and, although Mr. Dellenbach boldly states—without a citation of authority—that Chief Judge Buchanan's status as Chief Judge did not give him authority to act "without some specific designation of jurisdiction," Appellant's Br. at 13, that proposition is not at all self-evident. Again, if the judge erred in his belief that he had authority to delay the appeal, his error was, at most, a "grave procedural error"—not an act undertaken in "the clear absence of all jurisdiction."

#### b. Judicial capacity

We also cannot accept Mr. Dellenbach's argument that the judges did not perform the alleged acts in their judicial capacity. In *Stump*, Justice White set forth the approach we must follow in analyzing this issue. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1107. In *Eades*, Chief Judge Bauer applied the same analysis. 810 F.2d at 725–26.

Supervising the preparation of the record of trial, while a task ordinarily delegated to the court's officers and counsel, is clearly within the general responsibility of the court. Once the appropriate portions of the record have been requested, the trial judge must examine all prepared transcripts, papers, and other items in order to certify that they correctly reflect the proceedings. Ind.R.App.P. 7.2(A)(4). Certainly, enforcing the payment of fees is the responsibility of the court. Moreover, this court recently has concluded that the process used to transfer the requested record to the court of appeals is a judicial act. In *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir.1989), this court affirmed a district court's dismissal of a claim for civil damages against a judge who allegedly had falsified a trial transcript. In upholding the dismissal, we stated as follows:

> A judge has absolute immunity from damages liability for acts performed in his judicial capacity, *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), and the preparation of the record for appeal is such an act. It is not a matter simply of gathering all the documentary and nondocumentary materials that have been filed in the case and shipping them to the appellate court. Determining the composition of the appellate record entails a number of decisions that require skill and judgment. *Cf.* Fed.R.App.P. 10.

*Id.* at 377.

■ Moreover, the policy concerns that undergird the immunity doctrine clearly are fostered by granting immunity here. The party perfecting the appeal is necessarily the litigant who lost before the trial judge. This party may be quick to ascribe malevolent motives to the judge. Thus, judicial acts concerning the preparation and ultimate transfer of papers and transcripts to the appellate court qualify as judicial acts for which the grant of absolute immunity is functionally appropriate.

■ Finally, contrary to Mr. Dellenbach's assertions, the *ex parte* nature of the alleged call between Judge Letsinger and Chief Judge Buchanan does not, without more, transform that communication into a nonjudicial act. In *Stump*, the Su-

alleged wrongdoing); *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir.1981) (holding that judge who convicted defendant of contempt, an offense within the court's jurisdiction, but did so without the affidavit required to confer statutory jurisdiction over the particular contempt offense in question, remained entitled to immunity because he acted merely in excess of his jurisdiction); *Lopez v. Vanderwater*, 620

F.2d 1229, 1234 (7th Cir.) (judge who single-handedly arraigned, convicted, and sentenced defendant in a court where he had not been assigned to sit was held absolutely immune for such acts; though he may have acted in excess of, he did not act in clear absence of, jurisdiction), *cert. dismissed*, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980).

preme Court noted that "[c]ourts and judges often act *ex parte*." 435 U.S. at 363 n. 12, 98 S.Ct. at 1108 n. 12. Furthermore, the Court specifically has stated, as recently as its opinion in *Forrester*, that "the informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." 484 U.S. at 227, 108 S.Ct. at 544.

One additional consideration requires mention. In *Forrester*, the Supreme Court noted that absolute judicial immunity could also be justified on the ground that:

> suits against judges [are not] the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

*Id.* Mr. Dellenbach admits that his attorney was advised of Chief Judge Buchanan's decision that a separate transcript must be purchased. However, his attorney apparently never sought legal redress from the alleged wrong. Apparently, Mr. Dellenbach's attorney never requested a reconsideration of the payment or petitioned for a writ of mandamus in the Supreme Court of Indiana. *See* Ind.Code Ann. §§ 34–1–58–1 to –2 (West 1983 & Supp.1989).

### 2. The Court Personnel

■ In Mr. Dellenbach's complaint he alleged that, at the request of Chief Judge Buchanan, "Ms. Blue informed [Mr. Dellenbach's attorney that] the appeal would 'not be heard' until the money for the transcripts was received by the Lake County Indiana Court Reporters, Ms. Marianna Novak and Ms. Debra Banach." R. 2 (Allegation 1) (emphasis removed). He further alleged that, after payment was made for the transcripts, "Ms. Novak went into Judge Letsinger's office and spoke to him and told him the money had been received. Upon returning [to her office,] Ms. Novak told the Plaintiff[']s wife and sister that Judge Letsinger had spoken to [Chief] Judge Buchanan and told him it was now alright to proceed with the Plaintiff[']s appeal...." *Id.* (emphasis removed). Without more, Mr. Dellenbach alleges that "James Letsinger, Paul Buchanan, Ms. Janet Roberts Blue, Marianna Novak and Debra Banach conspired together with each other to compel the Plaintiff to obtain and pay for unneeded and unnecessary 'transcripts' as a pre-condition for the consolidated appeal of Herbert Dellenbach and Randall Dellenbach to be heard by the Indiana Court of Appeals." *Id.* (emphasis removed).

In *Lowe v. Letsinger*, 772 F.2d 308, 313 (7th Cir.1985), this court held that absolute immunity does not apply to clerks involved in nondiscretionary and ministerial functions. In *Lowe*, a clerk was alleged to have concealed from the plaintiff a court order by failing to send notice of the outcome for about three weeks. The court held that, because the clerk's duty of typing and sending a notice after judgment was a nondiscretionary function, the clerk was not entitled to quasi-judicial immunity. *Id.* By contrast, in *Eades*, 810 F.2d 723, a clerk and a court reporter were charged with altering a trial record. The court distinguished *Lowe*. It held that the clerk and court reporter were entitled to immunity because their alleged actions, filing a false certificate and altering the docket to reflect that falsity, constituted a breach of discretionary duties that "had an integral relationship with the judicial process." *Id.* at 726.[7] *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir.1989) involved facts similar to those in *Eades:* the alleged falsification of a trial transcript by a judge who was as-

---

7. *See Valdez v. City of Denver*, 878 F.2d 1285, 1289 (10th Cir.1989) (officials performing ministerial acts intimately related to the judicial process should not have to answer in court every time a litigant believes the judge acted improperly); *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir.1988) (court clerks " 'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction' ") (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)); *Mullis v. United States Bankruptcy Court, Dist. of Nevada*, 828 F.2d at 1390 (court clerks entitled to absolute immunity when tasks are integral part of judicial process); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986) (non-judicial officials entitled to judicial immunity if their official duties have an

sisted by court personnel. In deciding whether absolute quasi-judicial immunity was available to a court reporter who was alleged to have participated in the falsification of the transcript, the *Scruggs* court noted that "[a]uxiliary judicial personnel who perform functions at once integral to the judicial process and nonmechanical are entitled to absolute immunity from damages liability for acts performed in the discharge of those functions, just as judges are." *Id.* at 377 (citing *Eades,* 810 F.2d at 726); *see also Thompson v. Duke,* 882 F.2d 1180, 1184–85 (7th Cir.1989) (holding that the duty to schedule and conduct a parole violation hearing is an integral judicial function entitling state corrections officials to absolute quasi-judicial immunity). Applying this test, this court concluded in *Scruggs* that "[e]ven the preparation of an accurate transcript by the court reporter is not a mechanical process, given the difficulty of accurately transcribing what often are rapid-fire oral testimony and colloquy." 870 F.2d at 377. Moreover, the court concluded that such an extension of absolute immunity was justified under a functional analysis: "The danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts— alleging as here a conspiracy between the adjunct and the judge—warrants this extension of the doctrine." *Id.; see also Valdez v. City of Denver,* 878 F.2d 1285, 1289 (10th Cir.1989) ("[I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them."); *Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir.1980) ("[A] nonjudicial officer who is delegated judicial duties in aid of the court should not be a 'lightning rod for harassing litigation' aimed at the court.") (quoting *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir.1976)). We conclude that the alleged acts of the court personnel in this case were nonmechanical functions integral to the judicial process that are entitled to absolute immunity under the rationale articulated in *Scruggs.* Mr. Dellenbach alleged that the acts of Ms. Banach, Ms. Novak, and Ms. Blue were performed, not in the normal course of activities, but, instead, *at the request* of Judges Letsinger and Buchanan. In our view, this factor makes it clear that absolute immunity is appropriate. Indeed, as *Scruggs* quite pointedly noted, to grant judges absolute immunity but to deny that same immunity to court personnel would undermine the policies behind granting the judges absolute immunity for these acts. Thus, we conclude on the facts before us that the court personnel are entitled to absolute quasi-judicial immunity for their alleged acts of requesting and receiving payment for the transcript pursuant to the judge's instructions. We affirm the decision of the district court and dismiss Mr. Dellenbach's action against Ms. Blue, Ms. Novak, and Ms. Banach.

### Conclusion

The district court properly dismissed the complaint filed against Judge Letsinger, Chief Judge Buchanan, Ms. Blue, Ms. Novak, and Ms. Banach on the basis that Mr. Dellenbach's claims are barred by the doctrine of judicial immunity. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

integral relationship with the judicial process); *Briscoe v. LaHue,* 663 F.2d 713, 722 (7th Cir. 1981) (court followed *Dieu v. Norton,* 411 F.2d 761 (7th Cir.1969) and held court reporters at criminal proceedings were immune from liability under doctrine of judicial immunity), *aff'd on other grounds,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir.1980) (same policies that underlie a grant of immunity to judges justify a grant to those conducting activities intimately related to the judicial process); *Williams v. Wood,* 612 F.2d 982, 985 (5th Cir.1980) (holding no absolute immunity for entering an order and notifying the parties, but recognizing an exception to this general rule when a clerk performs "clerical actions explicitly commanded by a court decree or by the judge's instructions"). *But see Foster v. Walsh,* 864 F.2d 416, 417 (6th Cir.1988) (holding that whether act is discretionary or not makes no difference to quasi-judicial immunity question).