**James Earl WILLIAMS, Plaintiff,**

v.

**Robert RATH, et al., Defendants.**

**No. 90 C 6999.**

United States District Court,
N.D. Illinois, E.D.

Feb. 12, 1991.

the possible utility of this evidence for a legislature wishing to adopt, by statute, a table of damages.

James Earl Williams, pro se.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

James Earl Williams ("Williams") asks leave to file his pro se Complaint without prepayment of the filing fee. Williams asks for damages under 42 U.S.C. § 1983 ("Section 1983") against four Illinois Court of Claims judges (collectively the "Judges") as well as against a Court of Claims commissioner and deputy clerk. Williams also seeks an injunction to prevent defendants "from further violating my constitutional rights to be free from unreasonable seizure and deprivation of my property without due

process of law." This Court finds the Complaint to be without arguable legal merit, and it therefore denies both Williams' motion for leave to file in forma pauperis and this action as well.[1]

Williams alleges that he filed a suit in the Court of Claims (assigned docket number 89–CC–2203 ("89–2203")) to recover money for a stereo receiver and television set allegedly lost by the Illinois Department of Corrections ("Department"). On January 22, 1990[2] the Court of Claims granted judgment to Williams on the issue of liability and referred the determination of damages to Robert Rath ("Rath"), a commissioner before whom Williams had a number of other Court of Claims cases pending.[3]

Later Williams, unhappy with the lack of action in his cases and with Rath's failure to respond to his letter of inquiry, filed a state court mandamus petition to compel Rath to submit his report and findings to the Court of Claims Judges. In response Rath moved to dismiss the mandamus petition. Then on August 1 Williams moved to stay those proceedings, pending a ruling on a motion that he filed simultaneously in the Court of Claims seeking to have his cases reassigned to a commissioner other than Rath. On September 6 the state court granted Williams' motion for a stay of the mandamus action.

However, Williams did not get a ruling from the Court of Claims on his motion to disqualify Rath. Instead he received notice of a November 2 order in 89–2203 granting summary judgment for respondents and dismissing Williams' claim. In that order the Judges found that Williams had already received fair market value from Department for his stereo receiver and that his claim as to his television set was duplica-tive of claims in two of his other cases. Williams promptly prepared and tendered for filing the Complaint in this action, charging defendants with conspiring maliciously and fraudulently to dismiss his claim in 89–2203 in retaliation for his filing suit against Rath.

■ It is black-letter law that a judge is absolutely immune from damage liability under Section 1983 for acts taken within his or her jurisdiction and performed in his or her judicial capacity (*Stump v. Sparkman*, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978); *Dellenbach v. Letsinger*, 889 F.2d 755, 759–60 (7th Cir.1989)). At first blush it would appear that a simple application of that doctrine would foreclose Williams' damage claim against the Judges. But despite the title that they bear, judges of the Court of Claims are not truly judicial officers. Under the Illinois Constitution the Court of Claims is not a court of law—instead it is a fact-finding body created by the legislature "to receive and process in an orderly manner claims which might be made against the State" (*Seifert v. Standard Paving Co.*, 64 Ill.2d 109, 122, 355 N.E.2d 537, 542 (1976); accord, *Rosetti Contracting Co. v. Court of Claims*, 109 Ill.2d 72, 78, 92 Ill. Dec. 521, 523, 485 N.E.2d 332, 334 (1985)).

■ But the Judges' lack of membership in the judicial branch of state government does not necessarily strip them of any entitlement to absolute immunity. Absolute judicial immunity is not confined to judges alone. It extends to those "who perform functions closely associated with the judicial process" (*see Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985)): both prosecutors and witnesses in judicial proceedings, and both administrative law judges and executive

---

1. Williams qualifies in financial terms for in forma pauperis status. Where he founders, however, is in the substantive insufficiency of his claim—even under the generous standard accorded to impecunious pro se litigants.

2. All other relevant dates were also during 1990. Accordingly no further year designations will be included in this opinion.

3. Williams' Complaint identifies six cases pending before Rath in addition to 89–2203, while the copy of the mandamus petition attached to the Complaint also lists two more cases. Of course it is possible that those two other cases were resolved between the June 1990 filing of the mandamus petition and Williams' tendering of the Complaint here, in which event there would be no discrepancy between the two pleadings.

hearing officers who perform adjudicatory duties "functionally comparable" to those of a judge (*Butz v. Economou,* 438 U.S. 478, 513–14, 98 S.Ct. 2894, 2914–15, 57 L.Ed.2d 895 (1978)). *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988) (emphasis in original) has put the matter succinctly:

> [I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.

■ Dispute resolution is the paradigmatic judicial act. It is that function that the doctrine of absolute immunity is designed primarily to protect. *McMillan v. Svetanoff,* 793 F.2d 149, 151 (7th Cir.1986) (citations omitted) framed the principle in these terms:

> In order for quasi-judicial officials to be granted absolute immunity, their acts must reflect the essence of judicial decision-making and involve discretion of a judicial nature.

As *Forrester,* 484 U.S. at 226–27, 108 S.Ct. at 543–44 noted, the need for absolute immunity to protect those involved in proceedings of an adjudicatory nature is particularly acute because of (1) the inclination of disappointed litigants to sue those who rendered the unfavorable decisions and (2) the consequent adverse effects that such collateral suits might have on the independence of decisionmakers (see also *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913–14). Here the act that underlies Williams' Complaint—the Judges' dismissal of his claim in 89–2203—was clearly an act of a judicial nature qualifying for absolute immunity protection.

■ That does not end the analysis, for the adjudicatory nature of the challenged act is not itself enough to confer absolute immunity. Another crucial factor is the existence of procedural safeguards to protect the fairness of the proceedings and the impartiality of the decisionmaker. *Butz,* 438 U.S. at 512–14, 98 S.Ct. at 2913–15 extended absolute immunity to administrative law judges in part because of the extensive procedural protections built into the administrative hearing process. Similarly, the safeguards that are provided to protect prospective parolees from erroneous or arbitrary decisions was one of the factors that our Court of Appeals has relied upon in granting absolute immunity to parole officials who make parole release determinations (*United States ex rel. Powell v. Irving,* 684 F.2d 494, 497 (7th Cir.1982) ("*Powell*")). By contrast, the lack of procedural safeguards weighed heavily in the *Cleavinger* decision (474 U.S. at 206, 106 S.Ct. at 503) to accord no more than qualified (rather than absolute) immunity to prison officials who perform the adjudicatory function of determining an inmate's guilt or innocence in a prison disciplinary hearing.

Before the Court of Claims, the procedural protections accorded to claimants are much closer to those surrounding parole release determinations than to the prison disciplinary hearings dealt with in *Cleavinger:*

1. Court of Claims cases follow the same rules for pleadings and practice that are employed in an Illinois court of law: both the Civil Practice Act and the Illinois Supreme Court Rules (74 Ill.Admin.Code § 790.20 (1985)[4]).

2. Claimants may appear either pro se or by legal counsel of his or her choice (Code § 790.40(b)).

3. Each claimant is entitled to a hearing, at which there is a full opportunity to present witnesses and evidence to support his or her claim (Code §§ 790.110 and .120).

4. Subpoena power is available to compel the presence of witnesses and the production of documentary evidence (Ill. Rev.Stat. ch. 37, ¶ 439.9(B)).

5. All evidence at the hearing is transcribed (Code § 790.120).

6. Post-hearing briefs are required—or more accurately, will be waived "only upon good cause shown" (Code § 790.170).

---

**4.** All further references to Administrative Code provisions (all in the same Title 74) will simply take the form "Code § —."

7. All orders, including those disposing of the case, are docketed (Code § 790.250).

8. Written opinions are published in all cases involving claims for at least $2,500, and separate records of all lesser claims are also maintained (Ill.Rev.Stat. ch. 37, ¶ 439.18).

Indeed, a simple perusal of those published opinions shows that claimants in the Court of Claims are accorded most of the essential procedural protections accorded a plaintiff in a court of law, including an opportunity to cross-examine witnesses (*see, e.g., Tivador v. Illinois*, 40 Ill.Ct.Cl. 48, 52–53, 54 (1987); *McIntyre v. Illinois*, 39 Ill.Ct.Cl. 78, 82–84 (1987)) and to give rebuttal evidence (*Madison v. Illinois*, 40 Ill.Ct.Cl. 206, 209 (1988)).[5]

■ Finally, although due process does not require the full-blown appealability on the merits of a decision that has been rendered with the necessary procedural safeguards, the existence of some lesser degree of judicial review is a factor adverted to in such cases as *Powell*, 684 F.2d at 497 (citations omitted):

> Finally and most importantly, arbitrary parole denials by state officials can be reviewed via habeas corpus.

In that respect, it suffices that claimants before the Court of Claims have the right to appeal to a court of law by way of the common law writ of certiorari in what the Illinois Supreme Court has termed "exceptional circumstances," such as where the Court of Claims proceedings violated the claimant's constitutional rights by depriving the party of due process (*Rosetti Contracting*, 109 Ill.2d at 79, 92 Ill.Dec. at 523–24, 485 N.E.2d at 334–35, overruling *S.J. Groves & Sons* and *Seifert*).[6]

In light of the adjudicatory nature of the Court of Claims proceedings and the ample safeguards afforded by that tribunal to protect the fairness of those proceedings, this Court concludes that Illinois Court of Claims judges are indeed entitled to absolute immunity when acting in their quasi-judicial capacity. Here Williams challenges the decision rendered by the Judges in 89–2203. Because they were unquestionably acting in their judicial capacity when they dismissed Williams' claim, they are immune from damages in this Section 1983 suit.

■ To be sure, that decision does not of itself preclude Williams from proceeding with a claim for prospective injunctive relief (*see Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984)). But the injunctive relief prayed for by Williams is misdirected. He wants this Court to enter an order enjoining defendants from taking his property without due process—something they had nothing at all to do with.

■ At most defendants' constitutional duty was to provide Williams with a fair hearing on his claim against Department, the party actually charged with the wrongful taking of Williams' property. And in that respect Williams cannot contend that he was deprived of a fair hearing when he had an adequate remedy at law available to him at the time he instituted this action. Any claimant in the Court of Claims may file a petition for rehearing within 30 days after the filing of an opinion dismissing his claim (Code § 790.230). Instead of pursuing that orderly procedure, fully available

---

**5.** Illinois case law suggests that persons asserting claims against the State in the Court of Claims do not have the statutorily-conferred right to subpoena or to cross-examine witnesses (*S.J. Groves & Sons Co. v. Illinois*, 93 Ill.2d 397, 407, 67 Ill.Dec. 92, 97, 444 N.E.2d 131, 136 (1982); *Seifert*, 64 Ill.2d at 121, 355 N.E.2d at 541). While claimants may not have an absolute right of cross-examination, reported cases of the Court of Claims consistently show that the privilege is generously allowed.

**6.** Because there had been a clear violation of the claimant's due process right to be heard "at a meaningful time and in a meaningful manner" in *Rosetti Contracting*, the Illinois Supreme Court was not required to go on to consider whether its certiorari jurisdiction also extended, as petitioner claimed, to reviewability of the Court of Claims' decisions to see if they were "contrary to established law." Even so, the scope of review assured by *Rosetti Contracting* is closely analogous to the scope of federal habeas review stressed by our Court of Appeals in *Powell* (a review that is limited to constitutional infirmities).

to him to question the dismissal of his case after the Court of Claims had issued a previous order in his favor on the issue of liability, Williams almost immediately filed suit in this Court crying "conspiracy." Not having availed himself of all the procedures provided to him in 89–2203 itself, Williams cannot invoke the equity powers of this Court on grounds that he was denied a fair hearing in the Court of Claims.

■ That leaves only Williams' allegation that Rath and a deputy clerk conspired with the Judges to dismiss 89–2203. Plainly neither of those administrative officers had any direct responsibility for dismissing Williams' case. Williams tries to draw them into the case by pleading conspiracy. But although the purported basis for the conspiracy was retaliation for Williams' mandamus petition, he does not identify any overt act taken by either Rath or the deputy clerk in furtherance of the alleged conspiracy. Nor does he allege any mutual understanding between Rath or the deputy clerk and the Judges.

■ It is not enough, even for a pro se litigant, simply to assert the existence of a conspiracy (*Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206–08 (7th Cir.1980)). Because Williams offers no more than a naked allegation of conspiracy against either Rath or the deputy clerk, his claim against them cannot stand either.[7]

Accordingly, this Court finds Williams' suit to be frivolous as that term is defined under *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), and it denies Williams' motion for leave to file in forma pauperis. In accordance with the procedure prescribed by *Smith–Bey v. Hospital Administrator*, 841 F.2d 751, 758 (7th Cir.1988), this action is dismissed with prejudice pursuant to 28 U.S.C. Section 1915(d). In addition Williams is informed:

1. If he wishes to appeal this order of dismissal, within 30 days after the entry of judgment he must file a Notice of Appeal to the United States Court of Appeal for the Seventh Circuit (see Fed. R.App.P. 4(a)). That Notice of Appeal must be filed with the Clerk of the Court of the United States District Court, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604.

2. Although this Court of course expresses no substantive views on this subject, Williams should also be aware that if the Court of Appeals were to determine that such an appeal were "frivolous" in the legal sense, that could result in the imposition of sanctions by that Court (see Fed.R.App.P. 38).

---

7. If there were even some hint of a factual predicate for such a claim, this Court might give Williams an opportunity to replead. But here the unsupported conclusory assertion of a conspiracy (which is enough in itself to call for dismissal) is coupled with the inherent total improbability of the kind of plot Williams charges.