Thad D. LOWE, Plaintiff-Appellant,

v.

James E. LETSINGER, et al.,
Defendants-Appellees.

No. 84–2144.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1985.
Decided Aug. 29, 1985.

Carlton Lowe, University Park, Ill., for plaintiff-appellant.

Mark A. Psimos, Asst. Lake Co. Atty., Crown Point, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GARZA, Senior Circuit Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant, Thad Lowe, appeals from a district court order granting the three defendants—a state court judge, court clerk, and attorney general—absolute immunity and dismissing Lowe's civil rights action against them. The complaint contains two counts. Count I charges Judge Letsinger with violating Lowe's constitutional rights by failing for four years to decide Lowe's state post-conviction relief petition. Count II charges that after Judge Letsinger finally issued an order granting Lowe a new trial, the judge, the court clerk (Lukawski) and the state attorney general (Pearson) acted separately and in concert to conceal the judge's order from Lowe for about three weeks in retaliation against him for his petitioning the federal court for a writ of habeas corpus. In addition to compensatory and punitive damages Lowe seeks attorneys' fees incurred in bringing the prior federal habeas corpus action.

### I.

Lowe was convicted of criminal conduct in August, 1970 in an Indiana court.[1] In June, 1977, the Superior Court of Lake County, Indiana, Judge Letsinger presiding, held a post-conviction relief hearing. Several years passed without the issuance of a ruling on the post-conviction relief petition despite Lowe's repeated requests for Judge Letsinger to rule. Finally, in December, 1980, three and a half years later and Judge Letsinger still not having ruled, Lowe filed a petition for a writ of habeas corpus in federal district court. On January 15, 1981 the federal court entered an order granting the State of Indiana thirty days to show cause why the requested writ should not issue. On April 1, 1981,

following the grant of an enlargement of time in which to show cause, the State of Indiana, by its Attorney General, defendant in this case, Linley E. Pearson, informed the district court that "a ruling will be entered soon" on the pending state post-conviction relief petition. Thereupon, the district court dismissed Lowe's habeas petition for failure to exhaust state remedies. Lowe appealed to this court.

On July 14, 1981, while the appeal of the district court's habeas corpus dismissal was pending in this court, Judge Letsinger issued an order vacating Lowe's conviction and granting a new trial. The order was entered in the records of the Lake County Superior Court on July 15, 1981. The following day, July 16, the Indiana Attorney General inaccurately represented to this court, in a response filed to the federal habeas appeal, that "there is a post-conviction proceeding currently pending in the state court in Lake County, Indiana." Lowe asserts that Pearson made this inaccurate representation despite previously assuring this court that he would receive notice if and when an order was entered in the state proceeding and that he would in turn notify this court. Lowe also asserts that he (Lowe) did not learn of the release order until August 5, 1981 (twenty-one days after the entry of the order), when a clerk from the Seventh Circuit called his counsel. Lowe was released on August 10, 1981 and the state has chosen not to retry him.

On November 9, 1981 the Seventh Circuit issued an opinion holding that in view of the state court action granting a new trial the habeas petition was moot. The court went on in dictum, however, to state that the district court's dismissal of Lowe's habeas corpus petition was "clearly erroneous"; the four-year dormancy of plaintiff's state petition, despite Lowe's attempts to secure a ruling thereon, required the district court to conduct a hearing to determine whether the delay was justifiable.

---

* The Honorable Reynaldo G. Garza, Senior Circuit Judge for the Fifth Circuit, is sitting by designation.

1. The record does not reveal the crime of which Mr. Lowe was convicted. *But see infra* note 3.

*Lowe v. Duckworth,* 663 F.2d 42, 43 (7th Cir.1981).

Lowe filed a complaint against the judge, the court clerk, and the attorney general on April 25, 1983 seeking redress for alleged violations of his constitutional rights stemming from the delay in ruling on his state post-conviction petition and from the alleged concealment of the entry of judgment. The complaint also sought attorneys' fees incurred in bringing the federal habeas corpus petition. The district court dismissed the complaint holding all three defendants immune from the allegations under the doctrines of judicial or quasi-judicial immunity and denied the request for attorneys' fees. In reviewing the district court's dismissal for failure to state a claim we accept plaintiff's allegations in the complaint as true. *Bodie v. Connecticut,* 401 U.S. 371, 373, 91 S.Ct. 780, 783, 28 L.Ed.2d 113 (1971).

## II.

Lowe grounds his action in sections 1981, 1983, and 1985, Title 42 of the United States Code.[2] On its face the complaint is deficient under section 1981 and subsections (2) and (3) of section 1985 because it does not allege facts sufficient to support a claim that the defendants were motivated in their actions by racial or some other type of invidious, class-based discrimination. *See General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 390–91, 102 S.Ct. 3141, 3149–50, 73 L.Ed.2d 835 (1982) (section 1981); *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir.1982) (section 1985(3)); *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 344–47 (5th Cir.1981) (section 1985(2) & (3)). The only allegation in the amended complaint that advances a theory of class-based discrimination is the allegation that Lowe is black; standing alone this allegation is insufficient to ground either a section 1981 or a section 1985 claim. *See Martinez v. Hazelton Research Animals, Inc.,* 430 F.Supp. 186, 188 (D.C.Md.1977) (section 1981 action). To the extent the complaint alleges a motive for defendants' alleged misdeeds it is retaliation for Lowe's filing the habeas corpus petition, not discrimination.

The complaint also fails to state a claim under subsection (1) of 1985 because it does not allege facts that support a conspiracy to prevent a public official from discharging his official duties. *See* 42 U.S.C. § 1985(1). The allegation is of a conspiracy to deny a private individual his constitutional rights.

## III.

We now consider the sufficiency of the complaint under section 1983 which forbids any person from acting under color of state law to deprive any other person of his constitutional rights. 42 U.S.C. § 1983.

Courts in this country and England have embraced the doctrine of judicial immunity for centuries. *Stump v. Sparkman,* 435 U.S. 349, 355, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872). The doctrine is designed to give a judge the freedom to act upon his convictions, without fear of personal consequences. *Pierson,* 386 U.S. at 554, 87 S.Ct. at 1217; *Stump,* 435 U.S. at 355, 98 S.Ct. at 1104 (quoting *Bradley v. Fisher,* 80 U.S. at 347). And the doctrine applies even when the judge is accused of acting maliciously and corruptly. *Pierson,* 386 U.S. at 554, 87 S.Ct. at 1217. Should a judge err through inadvertence or otherwise, a party's remedy is through appellate processes. *Id.* Congress has the constitutional authority to abolish the immunity defense to any cause of action it creates, but it chose not to do so when it passed section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, under which Lowe sues. *Id.* at 554–55, 87 S.Ct. at 1217–18.

Although solidly grounded in our jurisprudence, judicial immunity is not without limits. The doctrine applies to

---

**2.** The complaint does not specify under which subsection or subsections of section 1985 the suit is brought. We therefore consider its sufficiency under all three.

damage claims, but not to suits seeking prospective relief, *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 1974–78, 80 L.Ed.2d 565 (1984); to judicial acts, but not to ministerial or administrative acts, *Stump*, 435 U.S. at 360, 98 S.Ct. at 1106, *Ex Parte Virginia*, 10 Otto 339, 100 U.S. 339, 348, 25 L.Ed. 676 (1879), *Lopez v. Vanderwater*, 620 F.2d 1229, 1233–34 (7th Cir.), *cert. dismissed*, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980); and only to acts taken over subject matter which lies within a judge's jurisdiction, *Stump*, 435 U.S. at 356, 98 S.Ct. at 1104, *Lopez*, 620 F.2d at 1233. Lowe seeks damages. We are therefore left to determine whether Judge Letsinger's alleged violative acts were jurisdictional and judicial.

■ Lowe's first claim against Judge Letsinger concerns Letsinger's four-year delay in ruling on Lowe's state post-conviction relief petition despite requests from Lowe that he rule sooner. Lowe does not dispute that Judge Letsinger had jurisdiction over the post-conviction relief petition.[3] The issue is whether his delay in issuing the decision was a "judicial act." Courts have considered the following factors in determining whether an act is judicial: (1) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might as well have been committed to a private person as to a judge, *Ex Parte Virginia*, 100 U.S. at 348; (2) whether the act is normally performed by a judge, *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107; and (3) the expectations of the parties, *i.e.*, whether the parties dealt with the judge as judge, *id.*

■ All three factors point to the judicial character of Judge Letsinger's decision not to issue a decision in the case for four years. Deciding when to issue a decision is part and parcel of a judge's docket management function over which he has broad and virtually unfettered discretion.

A judge must weigh a multitude of factors in deciding when to decide a case. The relative importance of the case among other pending cases, the prospects that another court will soon issue an important legal precedent, the difficulty of making a decision in a case, and the size and complexity of the case are only a few of the factors he must weigh. Moreover, the timing of a decision is normally, if not always, a judicial decision.[4] Finally, Lowe dealt with the judge as a judge when he repeatedly requested the issuance of a decision. *Cf. Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir.1980) (parties dealt with the judge as judge in requesting him to order the court reporter to prepare a statement of facts for an appeal), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). For these reasons we think that deciding when to decide a case, no less than deciding the case itself, is a judicial act for which a judge is absolutely immune. We therefore hold that Judge Letsinger's delay in deciding the case, albeit inordinate, is cloaked with absolute judicial immunity.

■ This is not to say that a party is without recourse where a judge delays making a decision for an inordinate period, only that the proper recourse is through habeas corpus proceedings not through civil proceedings against the judge. *See, e.g., Lane v. Brown*, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); *Sutton v. Lash*, 576 F.2d 738 (7th Cir.1978). Lowe himself took recourse in the habeas corpus procedure before filing this civil suit and obtained a state court ruling granting him a new trial about six months after filing the petition. *See Lowe v. Duckworth*, 663 F.2d 42 (7th Cir.1981).

■ Lowe also alleges that the judge, the clerk, and the attorney general "withheld notice that the order had been entered for over three weeks," and adds that defendants "orchestrated" the extended im-

---

3. The Lake County Superior Court on which Judge Letsinger sits has "original exclusive jurisdiction of all felony cases." Ind.Code § 33–5–29.5–4. Although the record does not reveal whether the conviction for which Lowe sought post-conviction relief in the Lake County Superior Court was a felony, we assume that it was

since Lowe does not challenge Judge Letsinger's jurisdiction over the post-conviction petition.

4. An exception might be where a statute specifically sets forth a maximum period for decision-making.

prisonment. Lowe alleges that "[t]he failure in this administrative duty" to provide notice extended Lowe's incarceration for three weeks. Lowe further alleges that the defendants acted in retaliation against plaintiff for seeking redress in federal court. Ordinarily the mere mailing of the notice is a clerk's chore, and we assume, although we are not told, that the same is true in Indiana.[5] So far as Judge Letsinger is concerned it makes no difference.

Assuming the judge did undertake to control the disposition of his own order he was still acting in his judicial role, exercising his discretion. His judicial involvement had not yet ended. Interference with giving notice cannot be classified as merely administrative so as to avoid the immunity defense; it is too much an integral part of the total judicial process, in contrast, for example, to the mere typing and posting of the notice by a clerk which is a ministerial task. We hold then that like a judge's decision as to when an order should issue, his decision as to whether and how notice should be given is also immunized.

These loose general allegations as to the judge do not justify cutting back on judicial immunity and thereby put a judicial officer through the disruptive process of a trial. To label some part of the judicial process as administrative or ministerial and thereby encroach on the judicial defense of absolute immunity, as disturbing as the judicial conduct may be, cannot be permitted. The functioning of the system is more important than some particular and rare judicial misdeed which can be dealt with in other ways, by appellate processes, the ballot, or, in the federal system, by impeachment or other sanctions, 28 U.S.C. § 372(c).

We are not holding that everything a judge does is judicial and clothed with abso-lute immunity, for if it is truly nothing more than purely ministerial or administrative the judge will not be absolutely immune, but the allegations of this complaint do not reach into that narrow exception.

Lowe also charges the clerk of the court, Lukawski, with acting separately and in concert with the judge and the attorney general to conceal the entry of a decision.[6] Courts have held that a court clerk enjoys absolute immunity in rare instances where he is performing nonroutine, discretionary acts akin to those performed by judges, see Williams v. Wood, 612 F.2d 982, 985 (5th Cir.1980); Kane v. Yung Won Han, 550 F.Supp. 120, 122–23 (E.D.N.Y. 1982), such as setting bail, Denman v. Leedy, 479 F.2d 1097, 1098 (6th Cir.1973). This quasi-judicial immunity does not apply to clerk Lukawski's alleged involvement in the concealment of the entry of the order because the clerk's duty to type and send notice after entry of judgment is a non-discretionary, ministerial task. Cf. Williams, 612 F.2d at 985 (no absolute immunity for entering an order and notifying the parties); McCray v. Maryland, 456 F.2d 1, 5 (4th Cir.1972) (no absolute immunity for filing papers); Bedron v. Baran, 90 Ind. App. 655, 662, 169 N.E. 695 (1930) (making entries in a docket book is a ministerial task).

We note that the clerk may still enjoy immunity under the qualified immunity doctrine. Under this doctrine a public official is shielded from liability if, when he engaged in the alleged violative conduct, the law was not so clearly established that he should have known that it was unconstitutional conduct, or if extraordinary circumstances otherwise excuse his violative conduct. Harlow v. Fitzgerald, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73

---

**5.** We are unable at this stage in the litigation to determine who within the Superior Court of Lake County has the duty of taking reasonable steps to notify a prisoner once judgment has been entered in his case. Neither party has cited, nor have we found, any Indiana statutory or case law which states who, if anyone, has the duty to notify parties once judgments are entered in their cases. Indiana Code §§ 33–17–2–1 thru –11 list the recordkeeping duties of Indiana Superior Court clerks and Indiana Code

§§ 33–5–29.5–1 thru –27 detail the jurisdiction and powers of Indiana Superior Court judges. None of these sections contains any mention of notifying parties upon entry of judgment in their case.

**6.** For some reason the clerk unfortunately dropped from sight on appeal, filed no brief, and was not represented at oral argument.

L.Ed.2d 396 (1982); *Coleman v. Frantz,* 754 F.2d 719, 725–31 (7th Cir.1985). The notion that a prisoner should be informed when a judgment is entered on his post-conviction petition is so elementary that the clerk cannot claim immunity under the first prong of the qualified immunity defense. On remand, the clerk may still, however, be able to establish immunity under the "extraordinary circumstances" prong of the *Harlow* test.

Some courts have also granted immunity to clerks who engage in constitutional misconduct at the behest of a judge. *Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir.1981); *Lockhart v. Hoenstine,* 411 F.2d 455, 460 (3rd Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969), and cases cited therein; *Gillibeau v. City of Richmond,* 417 F.2d 426, 429 (9th Cir.1969); *McCray,* 456 F.2d at 5. We do not adopt this defense, however, because in some instances the defense would provide a complete defense to a clerk who knowingly and intentionally violates another's constitutional rights. We prefer a rule that considers the fact that a clerk acted at a judge's behest as one factor among several which informs the second prong of the *Harlow* qualified immunity defense: whether extraordinary circumstances existed which would lead a reasonable clerk to believe that his conduct was constitutional.

 Finally, Lowe charges Pearson, the Attorney General of the State of Indiana, with acting separately, and in concert with the other two defendants, to conceal the entry of the vacation order. We need not reach the immunity issue with respect to Pearson, however, because the complaint is otherwise deficient in stating a section 1983 claim against him. The complaint alleges that during the Attorney General's representation of the State of Indiana in the habeas corpus proceeding in this court, *see Lowe v. Duckworth,* 663 F.2d 42 (7th Cir. 1981), he represented that he would receive notice if and when an order was entered in the state proceedings and would in turn notify this court. The complaint also alleges that on the day following the entry of the order the attorney general represented to this court that the state petition was still pending.

Conspicuously missing from the complaint is any allegation that Pearson actually knew about the entry of judgment on the date he made the inaccurate representation or at any other time prior to Lowe's receipt of the news from the Seventh Circuit clerk's office on August 5, 1981. Absent knowledge of the entry of judgment Pearson could not have participated in a conspiracy to conceal the entry of judgment from Lowe, for one cannot conspire to conceal the existence of something that one does not know exists.[7]

 The complaint also charges that Pearson acted apart from the conspiracy to deprive Lowe of his constitutional rights. Unlike the conspiracy claim, the claim against Pearson separately may not require an allegation of knowledge; in some instances a state official may be held liable under section 1983 for negligent, albeit unknowing, violation of another's constitutional rights. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Crawford v. Edmonson,* 764 F.2d 479, 486–87 (7th Cir.1985); *Bonner v. Coughlin,* 517 F.2d 1311, 1318 (7th Cir. 1975), *modified en banc,* 545 F.2d 565 (1976), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). Pearson may have had a constitutional duty to take reasonable steps to discover whether judgment had been entered (*e.g.,* calling the Lake County clerk's office on a regular basis) in view of (1) his role as respondent in the habeas petition proceedings, (2) his alleged representation to this court that he would receive notice if judgment were entered, and (3) the pivotal importance of the entry of judgment to the exhaustion question in the habeas proceeding. Assuming *arguendo* that Pearson had a constitutional

---

7. Nor does the complaint specifically allege knowledge by the judge or clerk. However, in those instances the lack of any scienter allegation is not necessary since it can be assumed that the Lake County Superior Court judge and clerk will know when a judgment is entered in their court. The same cannot be assumed with respect to the state attorney general who was neither a party nor counsel in the state post-conviction relief proceeding.

duty to inquire, the complaint is still deficient because it does not allege the breach of this duty. The complaint therefore fails to state a section 1983 claim against Pearson.

## IV.

■ Lowe asks this court to employ its equitable powers to grant him attorneys' fees for bringing the federal habeas corpus action because the necessity for bringing the action stemmed from the three defendants' alleged violative acts. We affirm the district court's denial of the request.

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Absent legislation allowing the award of fees, litigants, whether winning or losing, normally pay their own attorneys' fees.

Lowe points to no statute allowing habeas corpus litigants to recover fees, but asks us to overlook the lack of statutory authority and to invoke the court made rule that courts sitting in equity may in exceptional circumstances award fees. *See Rolax v. Atlantic Coast Line Railroad,* 186 F.2d 473, 481 (4th Cir.1951). But we are not sitting as a court of equity now nor were we in the habeas proceedings, for in neither proceeding did Lowe seek equitable relief.

In the alternative, Lowe asks us to invoke the common law rule that a court may award fees where the losing litigant has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline,* 421 U.S. at 258–59, 95 S.Ct. at 1622–23; *Brenner v. Negley,* 725 F.2d 446, 449 (7th Cir.1984). There is no allegation that the State of Indiana defended Judge Letsinger's delay in issuing a decision in bad faith in the habeas proceeding; this rule is therefore inapplicable.

Finally, even if one or both of these rules permitting us to award fees did apply we would not award fees because the request for fees should have been made in the habeas corpus action and not two years later in a civil rights action.

We note that should Lowe prevail against the one remaining defendant on remand the district court may, in its discretion, award attorney's fees incurred by Lowe in his civil action pursuant to 42 U.S.C. § 1988.

## V.

For the foregoing reasons we AFFIRM the district court's dismissal of count I concerning the judge's delay in deciding the state post-conviction relief petition, the dismissal of count II concerning alleged concealment of the entry of the order as it relates to the attorney general and the judge, and the denial of habeas corpus attorney's fees; we REVERSE the district court's dismissal of count II as it relates to the clerk and REMAND for further proceedings consistent with this opinion. In doing so we do not intimate any view on the merits of Lowe's allegation against the clerk. Circuit Rule 18 shall not apply. The parties shall bear their own costs.