**Mario L. SIMS, Sr., Plaintiff,**

v.

**Joseph E. KERNAN, individually and in his official capacity of Lieutenant Governor of the State of Indiana, Frank O'Bannon, individually and in his official capacity, Michael P. Barnes, individually and in his official capacity as the elected prosecutor of St. Joseph County, John Marnocha, individually and in his official capacity as the chief deputy prosecutor of St. Joseph County, H. John Okeson, individually and in his official capacity as the Clerk of the Indiana Supreme Court, Linda Scopelitis, individually and in her official capacity as the Clerk of St. Joseph County, Chief Judge Randall Shepard, in his official capacity as Chief Judge of the Indiana Supreme Court and as a member of the judicial nominating commission, the County of St. Joseph, and the State of Indiana, for purposes of injunctive relief, and damages where appropriate by law, Judge Sanford Brook, individually, and in his official capacity as Judge, St. Joseph Superior Court, Captain Clark, Lieutenant Dave Shock, and Lieutenant Tim Corbett, Defendants.**

No. 3:98–CV–0539 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 2, 1999.

Mario L. Sims, SCU–Westville, Westville, IN, plaintiff pro se.

Richard A. Nussbaum, II, Cheryl A. Greene, Sopko and Firth, South Bend, IN, for Michael P. Barnes, Prosecutor St. Joseph County, John Marnocha, Linda Scopelitis, Sanford Brook, defendants.

Robert C. Rosenfeld, South Bend, IN, for Capt Clark, Dave Shock, Tim Corbett, defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Plaintiff Mario Sims filed this *pro se* action pursuant to 42 U.S.C. §§ 1981, 1983, and 1985(3), alleging the violation of his federally protected rights by numerous persons and entities. When it conducted the screening mandated by 28 U.S.C. § 1915A, the court dismissed most of the defendants and claims, leaving only claims against Judge Sanford Brook and St. Joseph Clerk of Courts Linda Scopelitis. Judge Brook currently is a judge for the Indiana Court of Appeals; at the time he

dealt with Mr. Sims, he was a St. Joseph Superior Court judge. Mr. Sims has amended his complaint four times, most recently to add claims against three South Bend police officials. This case is now before the court on the plaintiff's motion for leave to file a supplemental complaint, a motion by former prosecutor Michael Barnes and former deputy prosecutor John Marnocha to strike the motion for leave to file a supplemental complaint, and a motion for summary judgment filed by defendants Brook and Scopelitis pursuant to Fed.R.Civ.P. 56.

Mr. Sims essentially seeks to amend his complaint a fifth time by means of a motion for leave to file a supplemental complaint. The proposed supplemental complaint asserts that after losing his re-election bid in November 1998, Prosecutor Barnes "in conspiracy" with his chief deputy, Mr. Marnocha, "destroyed exculpatory evidence and evidence of prosecutorial misconduct and police misconduct used to convict the plaintiff." Mr. Sims further suggests that counsel for defendants Brook and Scopelitis was a co-conspirator with Messrs. Barnes and Marnocha, and witnessed their destruction of documents.

■ Fed.R.Civ.P. 15(d) provides that if a defendant engages in actionable conduct after a lawsuit is commenced, the plaintiff may seek leave to file a supplemental pleading to assert a claim based on the subsequent conduct. See S.E.C. v. First Jersey Securities, Inc., 101 F.3d 1450, 1464 (2d Cir.1996), cert. denied, 522 U.S. 812, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997). Messrs. Barnes and Marnocha were dismissed from this case at the screening stage, and Mr. Nussbaum has never been a defendant in this case. Because the claims against two of the proposed defendants in the supplemental complaint have been dismissed and the remaining alleged conspirator has never been a defendant, the court has not acquired jurisdiction over any of them. Accordingly, the court will deny Mr. Sims motion for leave to supplement his complaint, without prejudice to his right to bring these claims in a separate case.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir.1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. Celotex Corp., 477 U.S. at 324, 106 S.Ct. 2548.

... In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir.1996).

Mr. Sims, an African–American, is a prisoner confined at the Indiana Department of Correction's Westville Correctional Facility pursuant to a 1994 conviction for breaking into the home of his estranged wife and sexually assaulting her at the point of a heroin-filled syringe and a

pistol. The parties' submissions establish that Mr. Sims was convicted in the St. Joseph Superior Court and that on July 1, 1994, Judge Jeanne Jordan, who presided over his trial, sentenced him to a term of twenty-seven years of imprisonment. Mr. Sims pursued an appeal, but terminated his appeal in order to pursue post conviction remedies. Judge Jordan recused herself from presiding over Mr. Sims' post conviction efforts and a series of special judges have been appointed, many of whom also recused themselves. Special Judge Donald Jones eventually assumed jurisdiction, and denied Mr. Sims' petition for post conviction relief on August 2, 1996, a decision that was upheld on appeal. Mr. Sims' case was most recently before Special Judge Michael Cook.[1] Judge Brook was appointed as special judge in Mr. Sims' case on March 3, 1996, and almost immediately recused himself. According to Judge Brook's submissions, after he recused himself from Mr. Sims' case, he merely acted as a conduit to receive materials filed in the case and transfer them to his successors as special judge. The chronological summary of filings and proceedings in Mr. Sims' case establishes that Judge Brook's name appears several times in the chronological summary of filings and proceedings after he recused himself, but with one exception, each entry merely shows that the court had received a document or that a document had been filed. The sole exception, which Mr. Sims cites in support of his claim against Judge Brook, is an entry dated January 27, 1998, which reads as follows:

### JUDGE BROOK

Defendant files Motion for Default Judgment. State is given 30 days to file a written response. Court takes motion under advisement.

According to plaintiff's exhibit seven, the motion for default judgment was filed in front of Judge Jones, who had been special judge in the case. Judge Jones entered an order stating that he "no longer has any jurisdiction having completed the petition for post conviction relief." Judge Jones ordered that all documents relating to the case, including the motion for default judgment be "transferred to St. Joseph Superior Court, Honorable Stanford Brooks, South Bend, IN, to be acted on as deemed appropriate." It is unclear why Judge Jones ordered that these materials be sent to Judge Brook, though it may be because of Judge Brook's activities as a conduit to receive materials filed in the case and transfer them to his successors as special judge.[2] The record establishes that Judge Brook never entered a substantive ruling on the motion for default judgment.

In his complaint, Mr. Sims alleged that Judge Brook acted outside his jurisdiction when he ruled adversely to Mr. Sims on unspecified matters in his post conviction proceedings. At the screening stage mandated by § 1915A, the court allowed this claim to proceed because Mr. Sims alleged that Judge Brook acted outside his jurisdiction to Mr. Sims' detriment, which prevented the court from dismissing the claims against him at the pleadings stage based on the doctrine of judicial immunity. Mr. Sims alleged that Clerk Scopelitis intentionally failed to file his motion for de-

1. Mr. Sims argues that he was the victim of a change of venue that was improper under state law. The materials before the court, however, establish that each of the judges who presided over his case were acting as special judges of the St. Joseph Superior Court. Plaintiff's exhibit 7 establishes that the case was erroneously redocketed with an Elkhart cause number when Judge Jones was appointed special judge, but Judge Jones rectified the error as soon as he discovered it.

2. The record indicates that Judge Brook himself did not know why Judge Jones directed that these materials be sent to him, but that he immediately took steps to have another special judge appointed. On July 10, 1998, Judge Brook wrote to Judge Dean Colvin, the Administrative Judge for Indiana Judicial Administration District 2, stating that "(t)his case initially came to me when I was chief judge of the Court. It then went to a Special Judge and for some reason, has come back to me. This is not a case appropriate for a St. Joseph County Judge. Could you kindly appoint a Special Judge in this matter."

fault judgment on the date it was mailed by certified mail and that the clerk's office failed to timely serve a copy of an order signed by Judge Brook on the plaintiff, in furtherance of the conspiracy against him, thereby prejudicing him. He further alleged that since 1994, Clerk Scopelitis "has failed to notify the plaintiff of several ruling[s], failed to file motions filed by the plaintiff, and given false or misleading information to those attempting to assist the plaintiff to obtain documents or file motions or pleadings in his behalf."

The defendants assert that the claims against them him are barred by the statute of limitations, that they are entitled to either absolute judicial immunity or qualified immunity, that court should abstain from exercising authority over this case pursuant to the abstention doctrine, and that the doctrine of *res judicata* precludes Mr. Sims from raising issues in this court that have been resolved against him in state court.

■ Because there is no federal statute of limitations for actions filed pursuant to § 1981, § 1983, and § 1985, courts apply the most appropriate state statute of limitations. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1229 (7th Cir.1984); *Johnson v. City of Fort Lauderdale,* 903 F.Supp. 1520 (S.D.Fla.1995), *affirmed* 114 F.3d 1089 (11th Cir.1997). Section 1983 claims are considered as personal injury claims for purposes of determining the applicable state statute of limitations. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Indiana statute of limitations applicable to § 1983 actions is the two-year period found in IND. CODE § 34–11–2–4.[3] *See Bailey v. Faulkner,* 765 F.2d 102 (7th Cir.1985). The courts apply the same statute of limitations to § 1981 and § 1985 actions as they do to § 1983 actions. *See Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (applying the same Maryland statute of limitations to all of the Reconstruction Era Civil Rights Acts);

*Wolf v. City of Chicago Heights,* 828 F.Supp. 520, 522 (N.D.Ill.1993).

Mr. Sims signed his complaint on October 6, 1998, and giving him the benefit of the mailbox rule of *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the court will assume, for the purposes of this memorandum, that he delivered his complaint to prison authorities on that date, and deem it to have been "filed" on October 6, 1998. Some of the actions Mr. Sims alleges were taken by the clerk's office occurred more than two years before the complaint was filed, and some within two years of the filing of the complaint. The particular incident in which Mr. Sims alleges that Judge Brook acted beyond his jurisdiction occurred on January 27, 1998, well within the two-year statute of limitations.

■ The plaintiffs also assert the doctrine of *res judicata,* which is designed to ensure the finality of judicial decisions. The doctrine of *res judicata* provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Federated Dep't Stores Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). After reviewing the parties' submissions, the court concludes that with the possible exception of the question of the merit of the plaintiff's motion for default judgment, the surviving questions presented to this court have not been presented to the state courts and decided in a manner that would justify invoking the *res judicata* doctrine. The court will discuss the treatment of the plaintiff's motion for default judgment in state court elsewhere in this memorandum.

■ The moving defendants note that this court relied on the abstention doctrine in dismissing some of the claims presented in Mr. Sims' complaint, and suggest that the court should apply this doctrine to the claims against them as well. The absten-

---

**3.** The statute of limitations for personal injuries cited in *Bailey v. Faulkner,* IND. CODE § 34–1–2–2, has been recodified as IND. CODE § 34–11–2–4.

tion doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requires a federal district court to refrain from interfering with pending state criminal proceedings in deference to principles of equity, comity, and federalism. *Younger v. Harris*, 401 U.S. at 53, 91 S.Ct. 746. Underlying this rule is the assumption that a plaintiff's federal constitutional claims can fairly by vindicated in state court proceedings without federal intrusion, *Grandco Corp. v. Rochford*, 536 F.2d 197, 202 (7th Cir.1976). The materials before the court, however, establish that there are now no pending criminal proceedings against the plaintiff and, in any event, the court does not believe that the abstention doctrine applies to the particular claims against the moving defendants that survived screening.

In regard to judicial immunity, the court declined to dismiss the claims against Judge Brook in the screening order because the plaintiff alleged that Judge Brook entered adverse orders after he lost jurisdiction to act in Mr. Sims' case. In his memorandum opposing summary judgment, Mr. Sims cites Indiana case authority purporting to stand for the proposition that once a judge disqualifies himself from a case, he cannot revoke or set aside his own disqualification, and therefore cannot act in the case. Because it is unclear whether Judge Brook acted within his jurisdiction in entering the order of January 27, 1998, the court is reluctant to bottom a ruling in this case on the doctrine of judicial immunity.

█ But even assuming that Judge Brook acted without jurisdiction on January 27, 1998, the materials now before the court establish that Mr. Sims has no valid claim on the merits. With all due respect to Mr. Sims, who has proven himself to be a resourceful and innovative litigant, the parties' submissions establish that the facts are not as advertised by the plaintiff in his complaint, and the record before the court simply does not support a claim against Judge Brook.

In his complaint, Mr. Sims alleged that Judge Brook acted outside of his jurisdiction by ruling adversely to Mr. Sims on motions submitted by Mr. Sims, and that the adverse rulings harmed him. The materials before the court indicate that on one occasion after he recused himself, Judge Brook entered an order giving the State thirty days within which to file a written response to Mr. Sims' motion for default judgment and taking the motion under advisement until the State had a chance to respond. Judge Brook did not rule on the merits of the motion for default judgment or any other substantive motion. This court concludes that even if Judge Brook acted without jurisdiction in entering an order on January 27, 1998, it in no way prejudiced Mr. Sims or violated his federally protected rights in any respect. Because the court concludes that Judge Brook did not violate the plaintiff's federally protected rights by entering the order described in the January 27, 1998 entry, it does not reach the question of qualified immunity.

Mr. Sims alleges that St. Joseph County Clerk, Linda Scopelitis took a number of actions that violated his federally protected rights. Mr. Sims alleges that she intentionally failed to file his motion for default judgment on the date it was mailed by certified mail and that the clerk's office failed to timely serve a copy of an order signed by Judge Brook on the plaintiff, and that since 1994, Clerk Scopelitis "has failed to notify the plaintiff of several ruling[s], failed to file motions filed by the plaintiff, and given false or misleading information to those attempting to assist the plaintiff to obtain documents or file motions or pleadings in his behalf." In response to these allegations, defendant Scopelitis responds with an affidavit in which she states that she "accepted receipt of legal pleadings in (Mr. Sims') case; noted them on the Chronological Case Summary ("CCS") which is attached hereto as Exhibit A; and served pleadings on the various parties and the various judges."

■ The moving defendants argue that defendant Scopelitis is entitled to absolute immunity against the plaintiff's claims, citing *Lowe v. Letsinger,* 772 F.2d 308, 313 (7th Cir.1985) for the proposition that "a court clerk enjoys absolute immunity in rare instances where the clerk is performing nonroutine, discretionary acts akin to those performed by judges." But, in a portion of the *Lowe* decision not referenced by the plaintiff, the Seventh Circuit goes on to say that this "quasi-judicial immunity does not apply to clerk Lukawski's alleged involvement in the concealment of the entry of the order because the clerk's duty is to type and send notice after entry of judgment is a non-discretionary, ministerial task." *Id.* at 313. The court concludes that the allegations against Clerk Scopelitis fall within the general "non-discretionary, ministerial tasks" routinely performed by clerks, rather than the "rare" exceptions where the clerk performs "discretionary acts akin to those performed by judges."

Mr. Sims alleges that defendant Scopelitis refused to respond to Judge Cook's request to provide him documents. In support of this claim, Mr. Sims cites his exhibit six, a letter to the Court Administrator from Judge Cook, dated October 19, 1998. This exhibit, however, does not support Mr. Sims' claim because Judge Cook states in the letter that he "has received the complete copy of the CSS I requested. After reviewing the same, I am requesting that you send copies to me of everything filed since November 7, 1997." This letter establishes that—someone presumably the St. Joseph County clerk's office—sent Judge Cook the material he requested, but that he wished to look at additional material. Other portions of the record establish that Judge Cook reviewed the additional material and was able to make a ruling on the questions before him.

■ Mr. Sims alleges that an unnamed "clerk of the St. Joseph Court, Small Claims Division refused to accept a properly prepared small claim" in January 1998.[4] But Mrs. Sims' affidavit does not state that she talked to Clerk Scopelitis or that the defendant Scopelitis had any actual knowledge of, or involvement in, the failure of the clerk of the small claims court to accept a complaint. A person cannot be held liable for damages under § 1983 unless he was personally involved in the alleged wrongdoing. *Starzenski v. City of Elkhart,* 87 F.3d 872, 879 (7th Cir.1996). The doctrine of *respondeat superior,* which allows a superior to be held liable for a subordinate's actions in some cases, has no application to § 1983 actions. *Moore v. State of Indiana,* 999 F.2d 1125, 1129 (7th Cir.1993).

■ Mr. Sims asserts that the clerk's office failed to serve him with an adverse ruling in a civil case he alleges he filed against the *South Bend Tribune.* In his affidavit, he states that he was unable file a timely precipe in the case against the *South Bend Tribune* "because the Clerk of the St. Joseph County Court failed to notify me on [sic] a timely manner and the appeal was dismissed." As noted above, there is no claim that Clerk Scopelitis had any actual knowledge of, or involvement in, the failure of the clerk of the St. Joseph County Court to notify him of the dismissal of his case, even assuming that the clerk of that court failed to send out a timely notification.

Mr. Sims states that the St. Joseph County Clerk's office failed to serve him with a variety of documents when he was representing himself in post conviction proceedings. Mr. Sims specifically asserts in his affidavit opposing summary judgment that "I was never sent a copy of Judge Brook's January 27, 1998 Order, nor a copy of Judge Brook's Order of March 1996." Mr. Sims is not in a position to state that the Clerk's office never sent out a particular document. He is in a position to state that he never received a particular document, but not why the document nev-

---

4. In the body of his memorandum, Mr. Sims asserts that this incident occurred in 1998, but his wife's affidavit states that the incident occurred in "January of 1997."

er got to him. The March 1996 incident is beyond the statute of limitations, and in any event, Judge Brook's order of March 19, 1996, merely declined appointment as a special judge. Even if he never received this order, Mr. Sims was informed of it in the March 29, 1996 order of Judge Jordan, which notes that Judge Brook had recused himself and appointed another special judge in his stead. In regard to the January 27, 1998 order, even assuming that Mr. Sims did not get a copy of the order until long after it was entered, it would not have had any actual adverse impact on him for the reasons stated in the following paragraphs.

Finally, the court turns to the question of the moving defendants' treatment of Mr. Sims' motion for default judgment, which in many respects is the centerpiece of his claim against them. The materials before the court establish that the clerk's office file marked Mr. Sims' motion for default judgment as having been filed on January 23, 1998. Mr. Sims alleges that, pursuant to Indiana law, the clerk's office should have file marked this motion with a date of January 20, 1998, because it was sent by certified mail. Even assuming *arguendo* that whoever in the clerk's office handled the document should have file marked it for an earlier date, Mr. Sims does not show how he was harmed at all by this alleged error, let alone how it would violate his federally protected rights.

Mr. Sims attached a copy of his petition for post conviction relief (filed December 23, 1995) and a copy of his motion for entry of default to the verified notice of removal of criminal prosecution he filed with this court. The motion for entry of default is based on a theory that the State of Indiana had not defended against the 1995 petition for post conviction relief. According to the motion for entry of default, "on November 20, 1997, the Honorable Donald Jones, Special Judge, Elkhart Superior Court # 1, determin[ed] the Elkhart Superior Court # 1 never had jurisdiction in this case, [and] vacated his order

of August 2, 1996, that had denied the Petitioner's petition."

The November 20, 1997 order, however, did not do what Mr. Sims believes it did. That order corrected the error the Elkhart County Clerk's office made in setting up Mr. Sims' case with an Elkhart Superior Court cause number, and stated that "(a)ll entries & orders entered in the above cause # 20D01–96–CF–45 under Elk. Sup. Court # 1 docket from 8-2-96 to present are null & void & of no force & are ordered expunged from the record." But the order also explicitly states that "on 8–2-96 Special Judge (Donald Jones) entered an order & opinion *as Special Judge* denying defendant's petition for post conviction relief & ordered the cause transferred & returned to St. Joseph Superior Court . . . *Donald W. Jones as Special Judge no longer has any jurisdiction having completed the petition for post conviction relief*" (emphasis added). The gist of this order is that Judge Jones, acting as special judge for the St. Joseph Superior Court and not in the cause number erroneously opened in Elkhart County, denied Mr. Sims' petition for post conviction relief. Judge Jones' denial of Mr. Sims' petition for post conviction relief was affirmed on appeal. On May 21, 1999, Judge Cook held that "inasmuch as the Petition for Post Conviction Relief was denied and no authority has been allowed for the filing of successive Petitions for Post Conviction Relief, and inasmuch as the ruling on the Petition for Post Conviction Relief makes all other Motions pending as filed by the Defendant/Petitioner pro se moot, there is no action for this court to take."

In finding that the plaintiff's post conviction relief petition had been denied, Judge Cook implicitly concluded that his motion for default judgment is legally and factually without merit. Based on its review of the parties' submissions, this court explicitly concludes that Mr. Sims' motion for default judgment is legally and factually without merit because Judge Jones denied his petition for post conviction relief on

August 2, 1996. That being the case, the State cannot possibly have been in default on January 20 or 23, 1998 for failure to respond to the petition. Because the motion for default judgment is meritless, any questions concerning the precise date it was filed, whether Judge Brook had jurisdiction to afford the State time within which to respond to the motion, and whether someone in the clerk's office neglected to send Mr. Sims a copy of Judge Brook's order is meaningless.

The parties in this case have submitted a considerable amount of material, which the court has reviewed and relied on in dealing with the moving defendants' summary judgment motion. Based on the materials before it, the court concludes that there is no evidence from which a rational factfinder could conclude that Judge Brook or Clerk Scopelitis violated Mr. Sims' federally protected rights under any of the statutes he cites. The individual claims against these defendants are without merit, there is no evidence that they conspired against Mr. Sims based on his race, as required to establish a § 1985(3) claim or even that they conspired against him in any manner, or that they took any adverse action against him because of his race as required to establish a § 1981 claim.

For the foregoing reasons, the court **DENIES** the plaintiff's motion for leave to file a supplemental complaint [docket # 41], **DENIES** the motion to strike [docket # 45] as moot, and **GRANTS** the motion for summary judgment filed by defendants Sanford Brook and Linda Scopelitis [docket # 158].

**IT IS SO ORDERED.**