# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2894

LANCE DAWSON,

*Plaintiff-Appellant,*

v.

THOMAS NEWMAN, JR., Madison County
Superior Court Judge in his individual
capacity, STATE OF INDIANA, INDIANA
DEPARTMENT OF CORRECTIONS,
ARTHUR HEGEWALD, BETTY WEIST,
VICTORIA FAFATA, and KATHY STOOPS-WRIGHT,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 03 C 1563—**Sarah Evans Barker**, *Judge.*

———————

ARGUED JANUARY 21, 2005—DECIDED AUGUST 18, 2005

———————

Before RIPPLE, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* When Lance Dawson's probation
was revoked, he appealed to the Indiana Court of Appeals
and won a ruling that the revocation was improper. On
remand Madison County Superior Court Judge Thomas
Newman, Jr., ordered Dawson released from prison. Judge
Newman's office faxed a copy of the Indiana Court of
Appeals' decision to the Indiana Department of Corrections

("DOC") but did not include a copy of the release order. Dawson thus remained in prison for another fourteen months, until he was released on parole supervision. He reported for supervision, informed parole officials that his original probation revocation had been overturned, but was unable to convince officials that he should not be on parole.

Dawson then brought this suit under 42 U.S.C. § 1983 against Judge Newman, Madison County Clerk of Court Kathy Stoops-Wright, the DOC, and several parole officials. The State defendants (the judge, the DOC, and the parole officials) moved to dismiss on absolute immunity grounds; the clerk, Stoops-Wright, filed an answer and did not join the motion to dismiss. The district court granted the dismissal motion, concluding that the judge was immune and the DOC and its parole officials could not be held liable for Dawson's wrongful continued incarceration and parole supervision because they had no power to "recompute a sentence" and were not at fault for the failure to transmit the release order. The district court later issued a brief "clarification" order indicating that the dismissal was "complete" and was meant to include dismissal of Dawson's claims against the clerk, even though she had not moved to dismiss.

We affirm in part and reverse in part. Judge Newman is entitled to absolute judicial immunity, and the claims against him were properly dismissed. The claims against the parole officials should not have been dismissed, however. The dismissal motion raised only the issue of absolute immunity—not the liability merits—and the parole officials are not entitled to absolute immunity. Finally, the district court's follow-up order summarily dismissing the claims against the court clerk was improper, as she had not moved to dismiss.

## I.  Background

We accept the facts alleged in Dawson's second amended complaint as true for purposes of our review of the district court's order granting the defendants' motion to dismiss. *Baker v. Kingsley,* 387 F.3d 649, 660 (7th Cir. 2004). In 1990 Dawson was convicted of certain criminal charges and placed on three years' probation with a suspended sentence of six years. In September 1992 Dawson's probation officer filed a notice of probation violation and a hearing was scheduled. The hearing was rescheduled several times due to the unavailability of the State's witnesses. On February 5, 1993, Dawson moved for a continuance. This motion was granted but the hearing was never rescheduled.

On June 12, 2000, approximately ten years after being placed on three years' probation and eight years after the alleged probation violation, the State filed an amended notice of probation violation. On October 23, 2000, Judge Newman revoked Dawson's probation and imposed the six-year term of incarceration. Dawson appealed. On July 18, 2001, the Indiana Court of Appeals held that Dawson's probation revocation was improper as it occurred long after his term of probation had expired. *See Dawson v. State,* 751 N.E.2d 812, 815 (Ind. Ct. App. 2001). The case was remanded to Judge Newman and he immediately entered a docket order mandating Dawson's release. Someone in Judge Newman's office faxed a copy of the Indiana Court of Appeals' decision to the DOC, but the release order itself was never transmitted. E-mails were sent between DOC employees indicating that Dawson was going to be released due to his successful appeal, and he was transferred from the Kentucky correctional facility where he was incarcerated to Plainfield Correctional in Indiana for "possible release on appeal."

But while the wheels of Dawson's imminent release ostensibly were moving forward, he remained in custody for another fourteen months. He did not question his incarcera-

tion, as he had not been informed of the Court of Appeals' decision and believed his appeal was still pending. On September 6, 2002, Dawson was finally released, but not as a completely free man; he was instead ordered to report for parole supervision. He reported as ordered, but by this time he had learned about the Indiana Court of Appeals' decision and Judge Newman's docket order and protested to parole officials that his placement on parole supervision was improper. Dawson's protests apparently fell on deaf ears. Dawson told his parole officer, Betty Weist, that he had been ordered released and should not be on parole. This prompted Weist to contact Judge Newman's court staff for advice, but none was forthcoming. Weist's supervisor, Victoria Fafata, told her to continue Dawson's parole supervision. Dawson's attorney got involved, and the matter was referred up the chain of command to Arthur Hegewald, Supervisor of Parole Services. Hegewald seemed unconcerned and declined to meet with Dawson's attorney, indicating that the snafu "did not matter" because Dawson's parole would soon expire of its own accord.

Dawson filed this lawsuit in state court under 42 U.S.C. § 1983 against Judge Newman, the DOC, and DOC parole officials Weist, Fafata, and Hegewald. The defendants removed the case to federal court and Dawson amended the complaint to add Madison County Clerk of Court Kathy Stoops-Wright as a defendant. Dawson filed a second amended complaint, alleging due process, equal protection, wrongful imprisonment, and cruel and unusual punishment violations, and also asserting state law claims for false imprisonment. The State defendants—Judge Newman, the DOC, and the parole officials—moved to dismiss pursuant to Rule 12(b)(6), asserting absolute immunity. As noted, Stoops-Wright filed an answer and did not join the motion to dismiss.

The district court dismissed the federal claims with prejudice, concluding that the judge was entitled to absolute

judicial immunity and the DOC and the parole officials "cannot be held liable" because "[n]either the DOC nor its parole agents are empowered to recompute a sentence in the manner which would have been required for Dawson to have been released." The court further concluded that "[t]he failure to transmit the [release] documentation was not the fault of the parole officers, who merely maintained their supervision over Dawson in the normal course of their duties."[1] The court's order purported to dispose of the entire case, even though Stoops-Wright had not moved to dismiss. Dawson therefore requested clarification from the court. The district court responded with a "clarification" order indicating that the earlier order was intended to include a sua sponte dismissal of Dawson's claims against Stoops-Wright because "the reasoning and disposition [of the earlier order] were complete, though one defendant failed to formally join in the challenge to the claims against her." Dawson appealed.

## II. Discussion

We review the district court's judgment granting the defendants' motion to dismiss de novo. *Baker,* 387 F.3d at 660. As we have noted, the district court held that Judge Newman was entitled to absolute judicial immunity but did not address the immunity argument of the parole officials, ruling instead on the merits that they "cannot be held liable" because they had no power to "recompute a sentence" and were "not at fault" for the failure to transmit the release order. Upon Dawson's request for clarification, the court summarily swept Dawson's claims against the court

---

[1] The district court also dismissed the state law false imprisonment claims without prejudice (false imprisonment was the only claim against the DOC); these claims are not at issue in this appeal.

clerk under the umbrella of the dismissal order, even though the clerk had not moved to dismiss. The court did not explain the reasoning behind this "clarification" order, saying only that the earlier dismissal order was "complete" and that "the court may, sua sponte, dismiss the complaint where the inadequacy of the complaint is clear."

On appeal, the parties argue the immunity question, and Dawson also argues that the district court should not have dismissed his claims against Stoops-Wright sua sponte. We take this last argument first. Stoops-Wright has not responded to it, which ordinarily means the point is deemed waived. *Holman v. Indiana,* 211 F.3d 399, 406 (7th Cir. 2000). In any event, Dawson is correct that the district court's sua sponte dismissal of Dawson's claims against Stoops-Wright was entirely inappropriate. "Unless a claim is frivolous, it is rudimentary that a court cannot sua sponte enter summary judgment or dismiss a complaint without notifying the parties of its intentions and allowing them an opportunity to cure the defect in the complaint or respond." *English v. Cowell,* 10 F.3d 434, 437 (7th Cir. 1993). The district court gave no notice that it intended to give Stoops-Wright the benefit of an order granting a dismissal motion she had neither filed nor joined. Dawson had no notice of the grounds invoked for the dismissal and was given no opportunity to respond. The court's "clarification" order did not identify any legal basis whatsoever for dismissing the claims against Stoops-Wright. Although Stoops-Wright contends on appeal that she is entitled to absolute immunity and breached no duty, these arguments must be raised first in the district court. *Id.* at 440 ("English was entitled to an opportunity to be heard before dismissal of his claims. This opportunity must be afforded, not on appeal, but at the district court . . . . "). The order dismissing Dawson's claims against Stoops-Wright must be reversed.

The dismissal of the claims against Judge Newman, however, was entirely appropriate, as the judge is entitled to absolute immunity. The doctrine of judicial immunity has been embraced "for centuries." *Lowe v. Letsinger,* 772 F.2d 308, 311 (7th Cir. 1985). It confers complete immunity from suit, not just a mere defense to liability, and "is applicable in suits under section 1983 because the 'legislative record [gave] no clear indication that Congress meant to abolish wholesale all common-law immunities.'" *Dellenbach v. Letsinger,* 889 F.2d 755, 758 (7th Cir. 1989) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)). If a judge errs "through inadvertence or otherwise, a party's remedy is through appellate process." *Lowe,* 772 F.2d at 311. Judicial immunity extends to acts performed by the judge "in the judge's *judicial capacity.*" *Dellenbach,* 889 F.2d at 759 (emphasis in original). That is, judicial immunity applies "to judicial acts, but not to ministerial or administrative acts." *Lowe,* 772 F.2d at 312. The Supreme Court has acknowledged the imprecision inherent in "attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges." *Forrester v. White,* 484 U.S. 219, 227 (1988).

Dawson argues that Judge Newman's failure to transmit the release order to the DOC was not a "judicial" act or omission but a "ministerial" or "administrative" one. He cites an Indiana statute that imposes a requirement upon "the court" to notify the DOC of a corrected or modified sentence: "Whenever . . . a court corrects an erroneous sentence or modifies a previously imposed sentence[,] . . . the court shall immediately send certified copies of the corrected or modified sentence to the department of correction." IND. CODE § 35-38-1-16 (2004). Judge Newman responds that this case is analogous to *Lowe,* which involved a § 1983 claim arising out of a judge's four-year delay in ruling on a postconviction motion and subsequent

three-week delay in transmitting the order granting postconviction relief. We held in *Lowe* that judicial omissions of this sort were entitled to absolute immunity. *Lowe*, 772 F.2d at 313. This case is substantially similar.

We began in *Lowe* by noting that three factors generally govern the determination of whether a particular act or omission is entitled to judicial immunity: "(1) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might as well have been committed to a private person as to a judge; (2) whether the act is normally performed by a judge; and (3) the expectations of the parties, i.e., whether the parties dealt with the judge as judge." *Lowe,* 772 F.2d at 312. We concluded in *Lowe* that "[a]ll three factors point to the judicial character" of the judge's delay in deciding the postconviction motion because "deciding when to decide a case, no less than deciding the case itself, is a judicial act for which a judge is absolutely immune." *Id.* We further concluded that the three-week delay in sending notice of the order granting postconviction relief was also immunized because although "[o]rdinarily the mere mailing of the notice is a clerk's chore" that did not involve the exercise of discretion, to the extent that the judge "did undertake to control the disposition of his own order[,] he was still acting in his judicial role." *Id.* at 313. Although the judge in *Lowe* was entitled to absolute immunity, the court clerk was not; we concluded that "the clerk's duty to type and send notice after entry of judgment is a non-discretionary, ministerial task." *Id.*

Similarly here, § 35-38-1-16 requires "the court" to send to the DOC a copy of any order correcting or modifying a sentence. To the extent that this imposes any duty on the judge himself (as opposed to the court clerk or other court staff as part of "the court" as an institution), the judge is acting in his judicial capacity, the parties are "deal[ing] with the judge as a judge," *id.* at 312, and the judge's

alleged failure to act is entitled to absolute immunity. Dawson's claims against Judge Newman are premised upon an alleged violation of what Dawson contends is a *personal* statutory duty of the judge, which necessarily involves an act or omission by the judge as a part of the judicial case processing function. Assuming arguendo that Dawson's premise is correct (that the statute imposes a personal duty on the judge), it follows that the acts or omissions in the performance of that judicial duty are immunized. To the extent that the statute imposes a duty on the judge at all, that duty implicates the judge's role *as judge* rather than as an administrative or clerical officer. Judge Newman is absolutely immune and the claims against him were properly dismissed.

The parole officers' immunity argument is another matter, however. They contended in the district court, and reiterate here, that they are entitled to absolute immunity because their duties as parole officers were closely aligned with the judicial process. The district court disregarded this argument and dismissed on the basis of its sua sponte conclusion that the parole officers "cannot be held liable" for the failure of others to correct the record regarding Dawson's status. This, like the sua sponte dismissal of Dawson's claims against the court clerk, was improper. Addressing the argument that *was* raised—in the district court and on appeal—we conclude that the parole officers are not entitled to absolute immunity.

Absolute immunity for acts by nonjudicial government officers is determined on the basis of "a functional approach." *Wilson v. Kelkhoff,* 86 F.3d 1438, 1443 (7th Cir. 1996). "Absolute immunity is only accorded for limited functions; '[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.'" *Id.* (quoting *Burns v. Reed,* 500 U.S. 478, 486-87 (1991)). Absolute judicial immunity "is not limited to government officials with the

title of . . . judge; officials performing 'functionally compara-ble' acts in other contexts, such as administrative agencies, are also accorded absolute immunity." *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 512 (1978)). Thus, we have held that parole officials are entitled to absolute immunity "for their activities that are analogous to those performed by judges." *Id.* at 1444. These include, for example, acts associated with the decision to grant, revoke, or deny parole, or the signing of an arrest warrant. *Id.* Because such activities involve decision-making that is "judicial" in nature, it follows that absolute immunity should shield such acts.

The allegations against the parole officials in this case do not involve acts that are analogous to those performed by judges. Weist, Fafata, and Hegewald allegedly ignored Dawson's protests and refused to investigate his claim of entitlement to release from parole in the ordinary course of performing their everyday duties as parole officials. They offer no precedent for the proposition that they should be entitled to absolute immunity for performing their day-to-day duties in the supervision of a parolee. We decline to extend absolute judicial immunity to the circumstances presented here.

Accordingly, for the foregoing reasons, we AFFIRM the judgment dismissing Dawson's claims against Judge Newman, REVERSE the judgment dismissing his claims against the remaining defendants, and REMAND for further proceedings.

No. 04-2894                                          11

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*